[Civ. Nos. 959, 1110.  Second Appellate District.—April 19, 1912.]

## C. W. ROGERS, Respondent, v. WEST RIVERSIDE 350-INCH WATER COMPANY, a Corporation, Appellant.

WATER RIGHTS—CONVEYANCE OF CANAL—RESERVATION OF EASEMENT—PROPORTION OF EXPENSE—INCREASE BY MODE OF DIVERSION.—Where a deed of a canal by the defendant to plaintiff's grantor reserved a perpetual easement to carry through the same three hundred and fifty inches of water for delivery to defendant's customers, at any point to be selected, subject to a proportionate share of the expense of maintaining the canal, and where, instead of one point of delivery, the defendant was allowed to select and maintain twenty-eight gates for the convenience of its customers, the plaintiff was thereby required to incur the expense of assistants to superintend the proper delivery of the water through all of such gates, and all expenses incident to such increased care and maintenance of the delivery of defendant's water is justly chargeable to defendant's proportionate share of the whole expense of maintaining the canal.

ID.—PROPER ASCERTAINMENT OF PROPORTIONATE SHARE OF EXPENSE—END OF IRRIGATING SEASON—CONSTRUCTION OF CONTRACT.—The court properly ascertained the proportionate share of expense chargeable to the defendant at the end of each irrigating season. The words "from time to time," as used in the contract, were intended by the parties to apply to and mean successive irrigating seasons. The expense chargeable is not ascertainable or payable until the season is closed. It is ascertained by taking the entire expense of maintaining and repairing the canal during the whole season, as the

common denominator, for ascertaining the proportionate share of expense chargeable to each during the season. Defendant's share of the expense of maintenance is such proportion thereof as three hundred and fifty inches of water bears to the whole number of inches passed through the canal during the season.

ID.—BREAK CAUSED BY TURNING IN TOO MUCH WATER—INJUNCTION—OBLIGATION TO REPAIR—FUTURE RECOVERY OF PROPER PROPORTION—MODIFICATION OF IMPROPER ALLOWANCE.—Where the uncontradicted evidence shows that a break in the canal in the early part of an irrigating season was caused by the plaintiff knowingly turning in too much water for its weight, though he was enjoined from diverting the same, the expense of repairing such break must fall upon him in the first instance, relying solely thereafter upon his right of recovery for the proper proportion due from the defendant; and the court erred in prematurely charging the defendant with a share of such expense, and its judgment must be modified by deducting such improper allowance.

APPEALS from a judgment of the Superior Court of Riverside County, and from an order denying a new trial. Benjamin F. Bledsoe, Judge Presiding.

The facts are stated in the opinion of the court.

Collier, Carnahan & Craig, for Appellant.

E. W. McGraw, Lafayette Gill, and Purington & Adair, for Respondent.

ALLEN, P. J.—No. 959 is an appeal from the judgment, while No. 1110 is an appeal from an order denying a new trial. The two appeals, by an appropriate order of the supreme court, have been transferred to this court for hearing and decision, and both of such appeals are heard and determined upon the same transcript, the questions involved in each being identical.

Plaintiff, the owner of a canal constructed for the purpose of conveying irrigating water, brought this action against defendant, the owner of an easement in said canal, to recover an alleged proportion of the expenses due plaintiff for the maintenance and repair of such canal. The canal, as constructed and operated during all of the time mentioned in the complaint, had a carrying capacity of more than one thousand inches of water; the eastern division thereof ex-

ceeded seven miles in length, while the entire canal exceeded ten miles in length. Plaintiff owned none of the water carried in said canal, but the same was operated entirely for the benefit of irrigators possessing rights to water carried therethrough. Defendant originally owned the canal, or that portion of it constructed prior to 1890, in February of which year it conveyed the canal so owned by it to plaintiff's predecessor in interest, in which conveyance the following reservation was made: "Hereby especially reserving, however, the perpetual right of way to carry through such canal the 350 inches of water, being the same 350 inches of water reserved by first party in its conveyance of other waters to second party by indenture dated May 23, 1888, recorded," etc., "subject, however, to first party's paying the proportion of the entire expense of maintaining and repairing such canal that 350 inches of water sustains and bears to the entire amount of water from time to time being carried through said canal." By the terms of the original reservation this three hundred and fifty inches of water was to be diverted and measured at a certain ranch line. Before this conveyance was made, defendant and plaintiff's predecessor in interest had entered into an amendment to the agreement by which it was especially understood that defendant should have the right to divert and use its three hundred and fifty inches of water at any point it might see fit, the water to be measured at the place of diversion under a four-inch pressure of a continuous flow, and no more.

It is obvious from an examination of the record that all of the water so reserved by defendant and to be by it carried through and diverted from such canal was water to the use of which the stockholders in defendant corporation, the owners of land and irrigators under such canal, were entitled; that as a fact defendant never diverted or measured the water to which it was entitled at any point selected by it, but, on the contrary, twenty-eight or twenty-nine gates were maintained along the canal, at each of which gates one or more of the stockholders received water for the irrigation of their lands, and plaintiff, through his servants and agents, maintained a constant supervision over such gates and the distribution of the water from the same, to the end that defendant's stockholders received their irrigating water at such times and

in such volumes and heads as best suited their interest in the matter of irrigation; that to maintain this supervision plaintiff gave his time individually, was required to and did rent an office, where the business of the canal was conducted, hired zanjeros and other people, and actually expended a large amount of money in the maintenance and repair of the canal, including its supervision and the division of the waters carried through the same.

The court found that the amount of water from time to time carried through the canal was less than nine hundred inches. It is evident that the court arrived at this statement of fact in the findings through a consideration of the average amount of water carried from time to time through the irrigating season of each year, which average amount the court fixed as the denominator of the fraction which should control in fixing the proportion which defendant should pay toward the cost of maintenance and repair.

The principal contention of defendant is that the maintenance charges imposed through the terms of the reservation were simply those incident to keeping the canal in condition for the transportation of water to be used in irrigation by those entitled to its use. This reservation clause was the subject of consideration in *Rogers v. Riverside Land etc. Co.*, 132 Cal. 9, [64 Pac. 95], where it was said by the court: ''The proper construction of the terms, as used in the reservation contained in the deed to the Stearns Ranchos Company, would seem to be that the canal or ditch should be kept in such condition as to enable the owners of water, who have the right, to have the same carried or conveyed through said ditch or canal unobstructed, and with as little loss as possible, and so as to prevent others from using or appropriating the quantity to which they may be entitled.'' The allegations of the complaint and the findings of the court that, under the terms of the easement, defendant had the privilege of diverting the three hundred and fifty inches of water at such places as it might wish to use the same, evidently refer to the division and use of the entire amount of water which defendant was entitled to have carried through the canal, not that a number of points of diversion were to be used for portions thereof by way of distribution to irrigators. But be that as it may, the sole duty still devolved upon plaintiff, through the obligation

of maintenance, to see to it that others did not use any of the quantity to which defendant was entitled. This in the very nature of things could only be accomplished through a supervision, management and control of the water delivered to the respective users thereof. It affirmatively appears from the answer of defendant that all of the water so carried under the reservation was water owned by the irrigators. In other words, the defendant as a corporate agency of the irrigators was conveying for delivery to those who owned the water the amount to which each was entitled for use in irrigation. While the defendant had evidently parted with its ownership of the water, if such it ever possessed, nevertheless it still was bound to cause the water to be carried to the points of diversion and there, under the maintenance clause, to be delivered by plaintiff without unnecessary loss and in such manner as to prevent appropriation thereof by those not entitled thereto. Conceding that under a strict construction of the easement clause, defendant would have been entitled to divert the entire amount of water to which it was entitled at a single point, and thereby reduce to a minimum the cost and expense incident to such oversight by plaintiff with reference to preventing the misappropriation by others of such water, yet defendant did not so elect to proceed; but, on the contrary, acquiesced and presumably authorized the delivery by plaintiff at many points convenient for the use of irrigators, thereby increasing the cost of maintenance. We are of opinion, therefore, that under a proper construction of the maintenance clause in the reservation, plaintiff was bound to see to it that all of the water so transported through the canal was delivered to the persons entitled thereto in such quantities as each was entitled to receive, and that any and all expense incident to such oversight and distribution of the water became and was a part of the maintenance of the canal, under the construction of the supreme court heretofore referred to. This being true, there is evidence to be found in the record sustaining the findings of the court with reference to the amount so found to be due for such maintenance. We are of opinion that the services rendered by plaintiff himself in supervision and through his zanjeros, the rent of an office, and all of the matters found by the court to be proper matters of maintenance, as set forth in the bill of particulars, were in fact

proper charges of maintenance and were properly allowed by the court in that regard. Entertaining these views, it is unnecessary to pass upon many other specifications of error with reference to the introduction and exclusion of testimony, the determination of the questions involved being included within the matter hereinbefore determined. Neither do we see any error in the action of the court in its determination that the average amount of water carried during the irrigating season was the proper denominator in determining the fractional amount which defendant should pay toward the cost of maintenance. The words "from time to time," as used in the contract, were intended by the parties to apply to and mean the successive irrigation seasons, which may or may not be coextensive with the year. The "entire expense of maintaining and repairing such canal" for such time or irrigation season is the expense incurred during the whole season, and hence cannot be determined and is not payable until the close of the season. The average flow of water during this period constitutes the entire flow for such time, and defendant's proportion of the expense for repairs and maintenance during such period is such part thereof as three hundred and fifty inches bears to the average number of inches, counting the three hundred and fifty inches whether carried or not, conducted daily through the canal during such season. Otherwise, plaintiff might select a month when none or but little water was being carried through the canal, and during such month clean the canal and make the necessary repairs thereof required for the entire season, and thus charge the whole of such expense to defendant. The complaint divides the time from November 1, 1906, to May 1, 1908, into four periods, the expenditures during each period being set forth in a separate count. As to each one of these periods, however, the court found that the average flow of water was less than nine hundred inches and fixed nine hundred inches as the basis upon which to determine the amount due from defendant. Hence, such division of the year into periods and findings made in no wise prejudiced defendant, for the result would have been the same had it been based upon the irrigation season. Likewise with the period extending from May 1, 1908, to September 1, 1908, covered by the fifth cause of action, and wherein the court found the average flow of water to be one

thousand inches. For aught that appears in the record, this was the irrigation season.

There remains, then, but one question of serious import presented by appellant, and that is with reference to plaintiff's right to recover for repairs occasioned by a break in the canal which occurred in May, 1908. The uncontradicted evidence shows that a break occurred in the canal on the 29th of May, 1908, and that the same was occasioned by plaintiff turning the water into the canal at a time when he knew from its condition that it would not sustain the weight of such water. The repair work made necessary on account of this break was shown to have been performed and expenses connected therewith incurred between the 29th of May and the 3d of June. While the record does not disclose the exact amount allowed by the court on account of the repairs occasioned by such break, plaintiff testified that the bill for $322.40 allowed by the court, generally speaking, was for repairing this break. This is the only amount which is definitely shown to have been expended in connection therewith. Appellant's contention is that this break was occasioned through the negligence of the plaintiff in turning in the water at a time when he knew disastrous results would follow, and that he should not be allowed to recover on account of such negligent management of the ditch. It is clearly established, to our minds, that prior to the break a demand was made upon defendant to pay its proportion of the expense of maintenance and repairs and that defendant refused to make such payment unless plaintiff would accept a sum in full settlement much less than that due. It is true that among the findings of fact we find the conclusion of the court that no proper demand for the proportion of the expense of maintenance was made by plaintiff before the break occurred. It does appear, however, that demand was made and were it material, we should have no hesitancy in saying that this conclusion of the trial court was unfounded. But we are confronted with the decision of the supreme court in *Smith* v. *Stearns Ranchos Co.*, 132 Cal. 180, [64 Pac. 261, 716], in which it is held, in effect, that under the agreement connected with the operation of the ditch the duty devolved upon plaintiff to maintain and repair the same, relying solely thereafter upon his right of recovery for the proper proportion due from the defendant. Were the ques-

tion an open one, we would have no difficulty in resolving this question in harmony with the dissenting opinion of the chief justice in the case last above cited, but do not, in view of the majority opinion, feel that we are warranted in disregarding such opinion, the effect of which is to place plaintiff in a very peculiar position. An injunctional order compels him to maintain the flow of water in the canal; in obedience to this order he does so, and yet he is made chargeable with the results which follow. Regardless, however, of this apparent hardship, it seems to be written in the law that plaintiff is so obligated. Accepting, as we feel we must, the doctrine of the Smith case, we must hold that the allowance of 326.5807-nine hundredths of $322.40 made by the court was an improper allowance, under the circumstances of the case.

We find in the record no other reversible error and feel that this is a proper case in which to direct a modification of the judgment. It is, therefore, ordered that the judgment of the trial court be modified by deducting therefrom the sum of $116.99, and as so modified the judgment and order are affirmed; appellant to recover one-half of costs of appeal.

James, J., and Shaw, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on May 18, 1912, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 17, 1912.