LARAMIE RIVERS COMPANY,
Appellant (Defendant below),

v.

PIONEER CANAL COMPANY, Appellee
(Plaintiff below).

PIONEER CANAL COMPANY, Appellant
(Plaintiff below),

v.

LARAMIE RIVERS COMPANY, Appellee
(Defendant below).

Nos. 4649 and 4704.

Supreme Court of Wyoming.

June 17, 1977.

David N. Hitchcock, Laramie, for Laramie Rivers Co.

George J. Millett, Pence, Millett & MacMillan, Laramie, for Pioneer Canal Co.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

The primary question in these consolidated appeals concerns the parties' relative obligations, under certain written instruments, to pay for the cost of constructing a measuring flume on a jointly-owned water supply canal. Pioneer Canal Company (hereinafter the plaintiff) filed an action seeking a money judgment against Laramie Rivers Company (hereinafter the defendant), urging that the defendant was responsible for all the costs of the flume under a 1909 deed or, alternatively, for a proportional share of the costs under either a 1964 agreement or an unjust-enrichment theory. The district court held that the defendant was responsible for a proportional share of such costs and entered a money judgment in favor of the plaintiff in the amount of $6,068.16, without interest.[1] We will reverse the district court's judgment to the extent that it failed to assess the full cost of said construction against the defendant, and to the extent that it failed to award prejudgment interest to the plaintiff.

The plaintiff, under various direct-flow and storage-water rights, is entitled to divert 306 cubic feet of water per second from the Laramie River. It originally did so through the Pioneer Canal, which ran from the Laramie River to Sodergreen Lake, and then through an outlet toward Laramie, Wyoming. The defendant holds a storage-water right for the Lake Hattie Reservoir, amounting to 68,500 acre-feet of water.

---

1. The dollars-and-cents amounts referred to in the trial court's judgment seem to be in error. Since we will remand the case for entry of a different judgment, we merely point out that the actual cost of construction was $9,825.38, not $9,825.73.

In order to supply Lake Hattie, defendant's predecessor in interest obtained a deed from the plaintiff in 1909 authorizing an enlargement of the Pioneer Canal. This enlargement increased the canal's carrying capacity to about 800 cubic feet of water per second. Using the enlargement, defendant could divert its share of Laramie River water through the canal to Sodergreen Lake and then through a supply ditch to Lake Hattie. In consideration for this right, defendant's predecessor agreed to "pay all expense of maintenance and operation" of the enlarged canal, and to keep and maintain that portion of the canal in good order and repair. In 1945, the City of Laramie acquired the right to convey 15 cubic feet of water per second through the enlarged canal to Sodergreen Lake, from which Laramie receives water through a pipeline. The city makes monthly payments to the parties as directed by this court in *Laramie Rivers Co. v. Watson*, 69 Wyo. 333, 241 P.2d 1080, 1087 (1952).

In March, 1964, the parties entered into an agreement whereby defendant agreed to pay $^{494}/_{800}$ths of the costs of repair and maintenance of the headgate and dam at the point on the Laramie River where water is diverted into the enlarged canal. The plaintiff agreed therein to pay $^{306}/_{800}$ths of such costs. Later in 1964, the water division superintendent required, pursuant to § 41–71, W.S.1957, the plaintiff to install a measuring flume on the enlarged canal near the Laramie River headgate and dam. Plaintiff requested that defendant share in the construction costs of the flume, but a negative reply was received. The flume, which had a carrying capacity of 800 cubic feet of water per second, was completed in December, 1965, at a total cost of $9,825.38.

After judgment in favor of the plaintiff, the defendant appealed contending that: (1) the flume was not necessary to measure defendant's water; and (2) it was not obligated to pay any of the flume construction costs. Plaintiff cross-appealed, urging that: (1) the trial court erred in not awarding it the entire cost of the flume construction; and (2) the trial court erred in failing to award it prejudgment interest.

## NECESSITY

 Defendant claims that since its storage-water right is measured in acre-feet, it could not have been required, under § 41–71, supra, to install a measuring flume on the enlarged canal. Additionally, defendant reasons that due to its late priority date it is entitled to all water which flows through the canal in excess of 321 cubic feet of water per second—the amount to which the plaintiff and the City of Laramie are entitled—and, therefore, at most, a flume with a 321-cubic-feet-of-water-per-second capacity was required.

Section 41–71, supra, provides in pertinent part that:

"The owner or owners of any ditch or canal . . . shall construct and maintain, when required by the division superintendent, flumes or other measuring devices at such points along such ditch as may be necessary for the purpose of assisting the water commissioner in determining the amount of water that is to be diverted into said ditch from the stream, or taken from it by the various users. . . ."

The record discloses substantial evidence to the effect that the plaintiff was required to install a measuring flume having a capacity of 800 cubic feet of water per second; that the State Engineer's office considers the flume necessary to measure the water which is being diverted to Lake Hattie by the defendant; and that the construction costs incurred were reasonable.

The factual question of necessity was in dispute, but as we recently reiterated in *Atlas Construction Co., Inc. v. Aqua Drilling Co.*, Wyo., 559 P.2d 39–40 (1977):

" ' . . . We must assume that evidence in favor of the successful party is true, leave out of consideration entirely evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it. [Citing case.]' *Stock v. Roebling*, Wyo., 459 P.2d 780,

784. See also *Tavares v. Horstman*, Wyo., 542 P.2d 1275; and ☞ ☞ 931(1) and 989, Appeal and Error, West's Wyoming and Pacific Digests."

There was sufficient evidence to support the court's decision that the construction of the flume was necessary and the cost thereof reasonable, and we will not disturb its judgment on that issue.

## PAYMENT OF COSTS

■ Defendant contends that it was not responsible for any of the flume construction costs, because plaintiff became a volunteer as to those costs when it failed to challenge the order requiring installation of a flume with a capacity of 800 cubic feet of water per second. On the other hand, plaintiff points out the futility of such a challenge, and contends that defendant should have been charged the full cost of construction, under the terms of the 1909 deed.

The evidence indicates that a flume with a capacity of only 321 cubic feet of water per second would have cost as much as the flume which was installed, if not more, due to the probability of washouts. Plaintiff clearly had an obligation under § 41–71, supra, to install at least the smaller flume, but the presence of a canal with a larger carrying capacity made it impractical to install an undersized flume. Defendant's interest in the enlarged canal is, therefore, at least partially responsible for the larger flume. The evidence presented at trial satisfactorily defeats defendant's claim that plaintiff was a volunteer as to the construction costs.

## OBLIGATION FOR PAYMENT

■ This brings us to the pivotal issue in this appeal, which is the extent of the parties' obligations to pay for the flume. The district court found, in this respect:

"That the Defendant should pay the proportion of the cost which the enlarged portion of the canal bears to the capacity of the canal, which is $494/800$ths of the $9,825.73 cost of the flume, which is $6,068.16, . . . "

It is unclear whether this proportional award was based on the 1964 agreement between the parties, or on plaintiff's unjust-enrichment theory which also set forth the proportion utilized by the trial court. It seems unlikely that such an award was based on the 1964 agreement, since that contract was limited to repairs and maintenance on the Laramie River headgate and dam. Both parties admit that this contract is probably not applicable to the present situation. The question narrows, then, to whether or not the flume construction was incidental to the "maintenance and operation" of the enlarged canal. If so, under the 1909 deed, defendant is obligated to pay the entire cost of the flume construction.

■ Defendant urges that construction costs are not a part of "maintenance and operation," citing *Polich v. Anderson-Robinson Coal Co.*, 227 Iowa 553, 288 N.W. 650; *American Woodworking Machinery Co. v. Agelasto*, 4 Cir., 136 F. 399; and *Layman v. State Unemployment Compensation Commission*, 167 Or. 379, 117 P.2d 974. All of these cases, however, are so factually distinguishable as to have little or no application to the instant case. We begin our inquiry into this question by referring to the general principle which holds:

"The rights of the parties growing out of the enlargement or extension of canals and ditches are fixed by the terms of the contract under which the enlargement was made, and so is their liability to contribute to the cost of maintenance of enlarged canals and ditches and of the new portions, the owners of the original ditch not being liable for the cost of maintaining the new portion, in the absence of agreement to the contrary. . . . " 94 C.J.S. Waters § 350c; at 397. [Footnotes omitted]

See also, Annotation, 169 A.L.R. 1147, at 1154–1157. We are here confronted with an agreement which expressly affirms this general principle, and it must be construed in that light.

The phrase "maintenance and operation" has a somewhat special meaning when it is

applied to a water-distribution system. In *Rogers v. West Riverside 350-Inch Water Co.*, 18 Cal.App. 707, 124 P. 447 (1912), the court was faced with the following maintenance clause:

> "subject, however, to the first party's paying the proportion of the entire expense of maintaining and repairing such canal . . . ."

In construing this clause, the court made the following statement:

> " . . . We are of opinion, therefore, that under a proper construction of the maintenance clause in the reservation, plaintiff was bound to see to it that all of the water so transported through the canal was delivered to the persons entitled thereto in such quantities as each was entitled to receive, and that any and all expense incident to such oversight and distribution of the water became and was a part of the maintenance of the canal, under the construction of the Supreme Court heretofore referred to. . . . " 124 P. at 449.

See also *Rogers v. Riverside Land & Irrigating Co.*, 132 Cal. 9, 64 P. 95; and *Smith v. Stearns Ranchos Co.*, 132 Cal. 178, 64 P. 261, reh. den. 132 Cal. 178, 64 P. 716. Similar to the deed in *Rogers,* the deed herein contains a reservation that

> " . . . Said party of the first part [Pioneer Canal Company] shall always have the right to conduct water through said Pioneer Canal for the irrigation of all lands lying under said Pioneer Canal, not, however, to exceed the amount of three hundred and six (306) cubic feet of water per second." [Bracketed matter supplied]

A proper construction of the maintenance clause contained in the 1909 deed indicates that part of the defendant's responsibility in maintaining the enlarged canal is to assure the proper distribution of water to plaintiff. That the flume installed on the canal relates to the proper distribution of water, at least to plaintiff, cannot be denied. The requisite nexus to "maintenance and operation" having been established, the defendant was, under the 1909 deed, re-sponsible for the *entire* cost of the flume construction. We hold, therefore, that the trial court erred in only awarding the plaintiff a part of such costs.

## PREJUDGMENT INTEREST

■ Plaintiff asserts that since the cost of the flume construction was a liquidated claim, it is entitled to interest at the statutory rate from the date it paid such costs—December 23, 1975. Defendant responds that the costs remained unliquidated until judgment was rendered, since prior thereto it had no way of ascertaining its proper share of such costs. We recently discussed the question of prejudgment interest in *Rissler & McMurry Co. v. Atlantic Richfield Co.*, Wyo., 559 P.2d 25 (1977). We said therein that a claim is liquidated when it is readily computable by simple mathematical computation, and that a mere difference of opinion as to the amount due or a dispute as to liability does not preclude recovery of prejudgment interest. 559 P.2d at 31, 33. Clearly, the amount sought to be recovered here was a sum certain arising from a statement rendered by the company constructing the flume. It is also clear that the dispute here is only as to the amount due and the defendant's liability in general. Plaintiff, therefore, was entitled to recover prejudgment interest.

We added a "word of caution" in *Rissler & McMurry Co. v. Atlantic Richfield Co.*, supra, at 34, where we said:

> " . . . The debtor must receive notice of the amount due before interest starts to run. A defendant cannot be in default if he is not informed of what to pay. There must be a fixed and determined amount which could have been tendered and interest thereby stopped. *Binning v. Miller*, 1944, 60 Wyo. 114, 146 P.2d 527. . . . "

The record indicates that plaintiff sent a letter to defendant, dated October 7, 1965, which stated that plaintiff "would be interested in discussing with you further the proper contribution of [defendant]." [Bracketed matter supplied] The next item of correspondence from plaintiff, dated

April 30, 1970, states that the plaintiff had previously billed defendant for its "proportionate share" of the $9,825.38 paid for the flume construction. The record, however, does not disclose a billing for the fixed amount which was expected from the defendant. We, therefore, must remand this portion of the appeal for the taking of further evidence in order to establish the date on which defendant received notice of a fixed demand. At a minimum, defendant received notice that plaintiff expected payment for the entire $9,825.38 on the date defendant was served with a copy of the Complaint filed herein—February 17, 1971.

The judgment of the district court is affirmed in part and is reversed in part, and the case is remanded for the taking of further evidence and entry of a judgment consistent with this opinion.