CASPER WYOMING THEATERS CO., ET AL. v.
REX INV. CO.*

(No. 1360; December 19, 1927; 261 Pac. 908)

Injunction—Possession Obtained by Force—Possession Cannot
Be Transferred by Injunction.

1. Where possession of theater was in issue, court of equity
will not protect by injunction possession gained by plain-
tiff by force and obtained only after several scuffles or
encounters with defendant's employees.

2. An injunction cannot be used to take real property out of
possession of one person and to give such possession to
another.

*See Headnotes: (1) 32 C. J. p. 131 n. 47 New; (2) 32 C. J. p.
134 n. 74.

Error to District Court, Natrona County; Bryant S.
Cromer, Judge.

Suit by the Rex Investment Company against the Cas-
per Wyoming Theaters Company and another. An injunc-
tion was granted to plaintiff, as prayed for, and defend-
ants bring error.

*Foster & Wehrli*, and *A. B. Manning*, for plaintiffs in
error.

A covenant as to right of re-entry requires enforcement
by legal proceedings; Nettleton v. Evans, (Wash.) 121
Pac. 54; McClellan v. Gaston, (Wash.) 51 Pac. 1062; it
cannot be accomplished by force, Weaver v. Richardson,
(Wyo.) 132 Pac. 1148; Spencer v. Co., 71 Pac. 53. The
application to dissolve the injunction should have been
granted. Defendant's remedy was by forcible entry and
detainer. Hammond Co. v. Boney, (Ind.) 107 N. E. 484;
Sec. 6621 C. S.; Judy v. Citizen, 101 Ind. 18; McIntyre v.
Murphy, 153 Mich. 342. The entry was forcible, Clark v.
Lagenbach, 130 Fed. 755; Donovan v. Chapter, (Mich.)
30 N. W. 329. The injunction operated to transfer the

possession from plaintiffs in error to defendant in error, and should have been dissolved, Blinn v. Soc., 140 Pac. 194; Black v. Jackson, 117 U. S. 349; Hall v. Henninger, (Ia.) 121 N. W. 6. Legal remedies are adequate for securing possession of real estate, Yellow Pine Co. v. Co., (Ala.) 37 So. 922; State Co. v. Judge, (Mich.) 106 N. W. 394; Bank v. Folsom, (Tex.) 247 S. W. 591; Hill v. Brown, (Tex.) 237 S. W. 252; Stone v. Snell, (Nebr.) 94 N. W. 525. The Court should have dissolved the injunction upon the showing made by plaintiffs in error. Tifel v. Jenkins, (Md.) 53 Atl. 429; Lamm v. Burrell, (Md.) 14 Atl. 692. The question of insolvency does not govern. Moore v. Halliday, (Ore.) 72 Pac. 801; Mechanics Foundry v. Ryall, (Calif.) 17 Pac. 703; Whithead v. Shattuck, 138 N. C. 150; Iron Mt. Co. v. Johnson, 119 U. S. 608. The petition does not state a cause of action in failing to describe the property, 5685 C. S.; Tracy v. Harmon, (Mont.) 43 Pac. 500; Scheffer v. Hines, (Ind.) 49 N. W. 348. The petition fails to show that the business was established or was being operated or that an injunction was necessary to protect it, which are essential allegations, 32 C. J. 156; Vanderplatt v. Ass'n., 62 Atl. 453. The petition did not show that plaintiff was without legal remedy. Williams v. Mathewson, (N. H.) 60 Atl. 688; Streator v. Linscott, (Calif.) 95 Pac. 42; Wilkening v. Wolff, 220 S. W. 598. The affidavit in support of the petition is insufficient to support the issuance of an injunction, Howard v. Eddy, (Kans.) 43 Pac. 1133; Power v. Village, 2 N. E. 609.

*Nichols & Stirrett, W. H. Patten* and *Durham & Bacheller,* for defendant in error.

The taking of possession, after default under conditional sale, is not conversion, Silverstin v. Kohler, (Calif.) 183 Pac. 451; Lambert v. Robinson, 162 Mass. 34; Wilmerding v. Co., (Ga.) 50 S. E. 100; Co. v. Dyson, 19 L. R. A. (N. S.) 606. The authorities cited by plaintiffs in error

relate to mortgages. We did not seek possession by injunction and no right of possession was involved in the injunction suit; we were in possession. Bank v. Folsum, 237 S. W. 591. The lease had been surrendered by refusal to pay rent, 16 R. C. L. 1177; Ft. Dearborn Lodge v. Kline, 3 N. E. 272; Allen v. Houn, (Wyo.) 219 Pac. 573. A lawful entry unaccompanied by force is permitted by the statute, 6621 C. S.; Smith v. Assn., (Mich.) 39 L. R. A. 410; Page v. Dwight, (Mass.) 39 L. R. A. 418; Allen v. Keily, (R. I.) 24 Atl. 776; Clark v. Mylkes, (Vt.) 115 Atl. 492, 2 Thompson Real Property, Sec. 1482; Browder v. Phinney, (Wash.) 79 Pac. 598. As the right of re-entry existed by agreement in the lease, the owner after taking possession can have such possession protected by injunction, 36 C. J. 597; Collins v. Stanley, (Wyo.) 83 Pac. 620. The judgment should be affirmed.

Before KIMBALL, Justice, ILSLEY and RINER, District Judges.

ILSLEY, District Judge.

This suit was instituted in the District Court of Natrona County by the defendant in error against the plaintiffs in error, by a petition asking for the issuance of an injunction restraining the plaintiffs in error from interfering in any manner with the possession of certain real property, consisting of the America and the Iris Theatres, situated in Casper, Wyoming. For convenience' sake, Rex Investment Company will be called "plaintiff," and Casper Wyoming Theatres Company and George R. Stewart, "defendants."

A temporary order was signed by the district judge restraining the defendants, their agents, employes, and representatives, from in any manner interfering with the possession, ownership, or control of the plaintiff as respects the real estate in question. Thereafter an answer was filed by the defendants and a motion was made by the

defendants, supported by affidavits, to dissolve the injunction. It seems that the court permitted the defendants to withdraw their answer and replead, which was done by filing another answer and another motion, supported by affidavits, to dissolve the injunction. And, upon the hearing had upon the answer and the motion to dissolve the injunction, the district court refused to dissolve the same, but made a final order making the temporary restraining order, as originally issued, permanent. Of this order the defendants complain.

The plaintiff contended it was the owner and in peaceable possession of the theatres, and that the defendants, through their agents, servants, and employes, interfered with its possession by attempting to conduct moving pictures in each of the theatres; and, therefore, sought and obtained the order restraining the defendants from in any manner interfering or molesting the plaintiff in its possession. On behalf of the defendants it is maintained that they were in peaceable possession of the two theatres under a lease, and that the plaintiff, on the morning of August 25, 1925, by one of its officers (A. H. Stewart) and certain attorneys and other persons employed by it, appeared at each of the two theatres and, by force, sought to obtain possession of the property, it being the contention of the defendants that they at no time voluntarily surrendered possession; that they insisted on their right to possession and endeavored to keep in possession of the two theatres, until the injunctional order, referred to, was served on them late in the afternoon of August 25. At the hearing affidavits were presented on behalf of both plaintiff and defendants, and in addition thereto oral testimony was received. It fairly appears from the affidavits and the testimony received that, on the morning of August 25, 1925, and for some years before that time, the defendants were conducting a moving picture business at each of the theatres in question; that on this particular morn-

ing the cashiers, door-keepers, ushers, popcorn girl, and operators of the moving picture machines, and other employes of the defendants went to work, as usual, in the two theatres; that A. H. Stewart, president of the plaintiff company, appeared about 8:30 A. M. in the lobby of the Iris Theatre, and when defendants' cashier opened the box-office and patrons appeared to purchase tickets, Stewart informed them· that he would take the money, and, after taking money for admissions, the doorkeeper for the defendants refused to admit the patrons from whom Stewart collected money. When the doorkeeper refused to admit the patrons, Stewart attempted to escort the patrons into the theatre, and a scuffle ensued between the doorkeeper and Stewart, and a considerable crowd congregated in front of the Iris Theatre, and during the confusion the chief of police and a couple of policemen cleared the lobby and restored order; that at approximately the same time at the America Theatre there appeared Mr. Patten (one of the attorneys for the plaintiff) and one Milo Garside, who proceeded to tear down the advertising matter placed in front of the America Theatre by the defendants, and to replace the same with advertising matter of an entirely different picture; that thereupon two ushers took down the advertising matter placed by Mr. Patten and Mr. Garside, and replaced it with defendants'; that Mr. Patten collected money in front of the box-office from patrons seeking admission to the theatre, and the patrons were not admitted by the doorkeeper and the ushers, and thereupon Mr. Patten attempted to push the patrons by the ushers and into the theatre. It further appears that there was considerable confusion in both theatres, and that several altercations took place in the lobbies, and that at one time there were two separate and distinct pictures thrown on the screen simultaneously, one by the regular operator of the America Theatre, and one by another operator running a different picture from the pro-

jection room, which operator was hired by the plaintiff; that after Mr. Patten had attempted to collect money for some twenty minutes, and had attempted to force people through the door into the theatre, he left the premises and the picture show was conducted by the manager of the defendant company until late in the afternoon of the 25th of August. It also appears that one G. R. Stewart, manager of the defendant company, signed and swore to a complaint in justice court, charging the president of the plaintiff company and one Milo Garside with unlawfully taking possession of the Iris and the America Theatres; and it further appears that about 5 o'clock P. M. of the 25th of August, the defendants were served with the order of injunction restraining them from in any manner molesting or interfering with the plaintiff; and thereupon the defendants and their employes desisted in their attempt to keep possession of the America and the Iris Theatres, and left the plaintiff in control. The defendants claim that they at no time surrendered possession of the properties referred to, until the injunction was served, and that it was solely by reason of the restraining order served upon them that they surrendered the properties.

A careful reading of the oral testimony of Mr. A. H. Stewart, president of the plaintiff company, discloses that, upon the failure of the defendant to pay the rent on the 23d of August, 1925, when it was due, he considered it his duty to take charge of the properties. He states that he told the manager of the defendant company that he was in possession. When asked if the defendant consented to his going in and taking possession, Mr. Stewart stated, ''I didn't ask him for his consent.'' And when asked the further question, ''Did he ever consent to your going in and taking possession?'' he answered, ''No.'' When asked further, ''Did he voice any protest to you to your going in and taking possession'' he answered, ''He was running around trying to give me a lot of misery. I paid no more

attention to George R. Stewart than I did to the popcorn girl.'' The same A. H. Stewart also stated in his affidavit, submitted in support of the injunctional order, among other things, that: ''The above mentioned George R. Stewart, manager of the above mentioned Casper Wyoming Theatres Company, a corporation, peaceably and voluntarily delivered to this affiant keys to the office, rooms, and all apartments of the above mentioned theatres, together with the keys to outside doors; and this affiant now has the same in his possession for the above named plaintiff.'' And Mr. A. H. Stewart was asked at the hearing, ''Now, what time on the 25th of August did you receive the keys referred to in this affidavit?'' A. ''About 5:30 in the afternoon.'' Q. ''Was this before or after the institution of the suit, or before or after service of the injunction order?'' A. ''It was after the service of the injunction order.'' Q. ''As a matter of fact, George R. Stewart had never delivered to you the keys that you allege in this affidavit, until after service of the injunction order?'' A. ''No, sir. I hadn't asked for them.''

The record establishes very clearly the unsettled and uncertain character of plaintiff's possession of the premises before the service of the restraining order.

Upon the facts presented in this case, we do not hold— and do not consider it necessary to decide the question— as to just when an injunction should be issued to protect one in the possession of property. There does not seem to be much controversy over the law in this case between counsel for the respective parties. The attorneys for the defendants state the proposition of law that ''a person out of possession cannot gain possession by injunction;'' and the attorneys for the plaintiff state, in their brief: ''No question of *right of possession* was presented to the trial court for determination, and we do not believe it is the province of a court of equity to determine such a question.'' And again: ''We proceeded upon the theory that

we had possession; that the only question for determination was *possession,* and, as we have shown, the court found that we did have *possession.* We neither sought to litigate the law to possession, nor considered it relevant under the issues. We invited inquiry on one point only: that of possession when the suit was filed. * * *"

We feel that, under these circumstances, the case can readily be decided upon the facts; and there is no question in our minds but what the defendants were in peaceful possession on the morning of August 25, 1925, at which time the plaintiff sought to take over the control of both theatres, and in doing so the employes of the plaintiff had several scuffles or encounters with the employes of the defendants. The plaintiff, if it gained possession at all before the service of the order of injunction, gained what is termed by some writers a "scrambling possession." A court of equity will not protect possession gained in this manner. It tends to encourage breaches of the peace and physical violence.

We are not unmindful of the conflict among the authorities in regard to the right of a landlord to dispossess a tenant without legal process; but under the facts in this case we do not deem it necessary to go into that phase of the question.

In view of the confusing situation as it existed on the 25th of August, 1925, between the parties to this action, as respects the possession of the two theatres in question, the granting of the injunction, under the circumstances presented, in practical effect took the possession from the defendants and gave it to the plaintiff. An injunction cannot be used to take property out of the possession of one and give the possession to another.

In the language of Black v. Jackson, 177 U. S. at p. 361, 20 S. Ct. 652, 44 L. Ed. 801, it is well stated that:

"This remedy by injunction, both mandatory and prohibitive in character, may and does sometimes become a

very far-reaching and oppressive, as well as a speedy and effective, one, and should only be granted by courts of equity in cases where the applicants therefor bring themselves clearly within the well-defined and established rules authorizing the issuance of same; hence, such courts rarely deem it necessary or advisable to interfere in this manner, to aid a person endeavoring to recover the possession of real property.''

We are, therefore, of the opinion that the injunction should be dissolved. The order making the temporary injunction permanent will be reversed, and the case remanded with instructions to dissolve the temporary injunction and dismiss the action at plaintiff's cost.

KIMBALL, J., and RINER, District Judge, concur.