BURLEIGH BINNING, Plaintiff and Appelant,

vs.

DAVID P. MILLER, as Water Division Superintendent of Water Division No. 4, State of Wyoming, Defendant and Respondent,

WILLIAM BAYER, CHARLES J. BAYER, BAR CROSS LAND AND LIVESTOCK COMPANY, a corporation, and ALLIE BAYER, Interveners and Respondents.

(No. 2270; Mar. 7, 1944; 146 P. 2d 527)

*J. A. Greenwood,* of Cheyenne, for plaintiff and appellant.

*A. L. Taliaferro* and *W. A. Muir,* both of Rock Springs, for interveners and respondents.

120

## OPINION

RINER, Justice.

This case has been before this court on a former occasion, and the record then submitted was very fully examined and discussed, both as to the pleadings of the parties and the facts involved, by an opinion filed April 29, 1940. Binning v. Miller, Water Division Superintendent, (Bayer et al., Interveners) 55 Wyo. 478, 102 Pac. (2d) 64. As indicated therein

the controversy to be disposed of in fact lay between the plaintiff, Binning, and the then interveners William Bayer and Charles J. Bayer, as to the ownership of a certain reservoir of water, and the dam which impounded that water, in Sublette County, Wyoming, Miller, the Water Division Superintendent, having declared his willingness to abide by the decision of the court. The cause was remanded for certain purposes to the district court, as will presently appear, and the Bar Cross Land and Livestock Company, a corporation, and one Allie Bayer, came into the litigation as additional interveners. Such reference only as may be necessary here will be made to the record resulting from the former hearing and the opinion of this court thereon in order, as far as possible, to avoid repetition.

It was determined here, upon the record aforesaid, to state the situation briefly, that the plaintiff and those who claimed an interest in said dam and reservoir should re-litigate the matter of their several interests upon the theory that all were cotenants, and, in order to forestall future difficulties and uncertainties, the rights of each should be completely adjudged. In the course of its former opinion this court said:

"It may be noted that while the court awarded to the interveners a definite right in the reservoir in relation to the right of Binning, the court failed to determine the total proportionate amount of the stored amount to which either the plaintiff or the interveners are entitled. That total proportionate amount will depend on the amount of water to which other parties are entitled, if any. The amount to which each is entitled will be diminished proportionately when others are admitted. Hence what amount is to be turned out to Binning, how much to the interveners? Nobody knows. This might lead to endless confusion and claims for damages. That this is not a desirable

situation is clear. The interveners sued for a definite interest. That definite interest was not awarded them. It would seem to be clear that with the interveners contending that others had an interest in the reservoir, and with others who were witnesses in the case claiming such interest, the definite amount of water to which the plaintiff and the interveners respectively are entitled could not be definitely settled."

After pointing out that as to the intervener Charles J. Bayer, the then record failed to show that he had an interest in the dam and reservoir as he claimed, and as the district court at the time had determined, this court also said: "Whether or not it is possible to correct the situation in the further proceedings in this case, we do not know."

As to what should be done in the case thereafter on remand was directed as follows; after reversing the judgment concerning the rights of the interveners regarding the dam and reservoir the opinion concluded:

"we think that it would be best to make the following order as to what should be done with reference thereto in the future, namely, that the cause is remanded to the district court with direction that, if the interveners shall not, within a reasonable time, cause to be brought into the case the other parties interested in the reservoir in question, the petitions of intervention should be dismissed, unless the court, on its own motion, prefers to have these parties brought in. If the parties are brought in, then the court should proceed to ascertain and determine the rights which the respective parties have in and to the reservoir in question, if any, and ascertain and determine the amount of contribution which they should make to the outlay and expenses made by the plaintiff Binning, fixing a reasonable time within which payment to Binning shall be made, and directing that, unless such payment is so made, the respective parties not making it shall have no interest in and to the reservoir, and that such other and further proceedings be had

which are not inconsistent with this opinion. It is accordingly so ordered."

The suggestion was then made that if new parties were brought into the case, "the evidence already submitted be used insofar as feasible, permitting the parties, however, to introduce further testimony, substitutional or additional, as they may deem advisable."

The cause was therefore returned to the district court and new parties were brought into the cause and it was duly found by the district court that, "all the proper and necessary parties in interest are now before the Court upon proper Petitions of Intervention, and that the respective rights of all the parties in interest can be determined upon the pleadings and evidence, by the Court, without prejudice to the rights of the other parties."

The pleadings of the plaintiff and those of Wm. Bayer and Charles J. Bayer, as originally filed in the case, were used on the re-trial of the suit together with certain supplemental pleadings. The original pleadings were reviewed in our former opinion in this case and it will not be necessary to do that here. The supplemental pleadings of the Bayers, the plaintiff, and the pleadings of the Bar Cross Land and Livestock Company, as an intervening defendant may be properly herein outlined. One Allie Bayer was also permitted to file a petition in intervention but inasmuch as the trial court found against any claim made by him, and he has not appealed, it is not necessary to notice his connection with this litigation at this time.

The supplemental separate answer of Charles J. Bayer states in substance that he acquired from Glenn A. Coleman and his successors in interest "an undivided one-half interest" to certain lands fully described therein together with a "one-half interest in the

water rights appertaining thereto" for 174 acres and 248 acres respectively or a total of 422 acres; also that be acquired certain described lands from William Bayer with the water rights for the irrigation of 158 acres therein; that prior to and at the time plaintiff acquired a right by permit to construct the reservoir in question the plaintiff, William Bayer, Glenn A. Coleman, the A. W. Smith Land and Livestock Company, Allie Bayer and Charles J. Bayer, jointly contributed to the construction of a reservoir dam at the outlet of WillowLake, making said contributions pro rata and in proportion to the irrigable lands severally owned by them and to be irrigated therefrom; that plaintiff's permit was procured by him for the use and benefit of the persons last above named; that the aforesaid dam was constructed during the years 1919 to 1922, under a permit issued to William Bayer and Glenn A. Coleman, by the United State Forest Service, said dam being then within the Wyoming National Forest, this permit being for the benefit of the persons named above in this paragraph; that said dam was completed to a height of six feet above the lake water level; that thereby these parties became, except as others have succeeded to the interests of some of them, owners in common of joint interests in said dam according to the irrigable acreage of their respective lands; that Charles J. Bayer has succeeded to the interests of Glenn A. Coleman and William Bayer, upon the basis of the lands and water rights mentioned above; that plaintiff, about June 18, 1922, without the knowledge or consent of this intervener, or any of the other joint owners in said dam, acquired a permit from the State Engineer to construct a reservoir on said lake with the purpose of wrongfully excluding them from any interest in said reservoir dam; that said plaintiff added material to the

dam to make it two feet higher, lowered the outlet thereof two feet, and installed a cement gate and spillway at a cost of not to exceed $1,518.00; that Charles J. Bayer offered to pay his pro rata share in this additional work and also in the reasonable cost of maintenance of said dam.

The supplemental spearate answer of William Bayer alleged substantially that in addition to the lands and water rights owned by him and set forth in his separate or original answer in the case he acquired from Glenn A. Coleman an undivided one-half interest to said lands mentioned in Charles J. Bayer's pleading as above described, this one-half interest in their irrigable acreage being one-half of 422 acres, or 211 acres, and also certain lands from Margaret Bayer, and water rights for those lands owned by her, said water rights being for 55 acres of irrigable land therein; that William Bayer and his predecessors in title to the lands and water rights described in his pleading, agreed, in the year 1919, to build and did build the reservoir dam mentioned above as alleged in his original separate answer and he contributed to the building thereof; that the lands in this supplemental pleading described and the water rights therefor are part of the lands to be irrigated from the water stored by said dam under the agreement between the plaintiff, Perry W. Jenkins, Glenn A. Coleman, and the other parties thereto, and was part of the acreage to be considered in determining the proportional interests of the parties in the ownership of the dam.

The answer and petition in intervention of the Bar Cross Land and Livestock Company, to review it briefly, in substance states that it is a Wyoming corporation and owns certain described lands in Sublette County, Wyoming, appurtenant to which is a water

right for 215 acres of irrigable land; that about March 29, 1922, plaintiff acquired a reservoir permit to construct the Willow Lake reservoir dam, said permit being for the use and benefit of the plaintiff, William Bayer, Charles J. Bayer, Allie Bayer, Glenn A. Coleman, and the A. W. Smith Land and Livestock Company, the latter being then the owner of the lands and water rights in this paragraph mentioned. The remaining portion of this pleading is quite like that of Charles J. Bayer above outlined, except that it is alleged that the Bar Cross Land and Livestock Company, since the plaintiff procured said permit has succeeded "to the said rights and ownership of the A. W. Smith Land and Livestock Company."

The plaintiff replied to the supplemental pleading of William Bayer by denials of the latter's having any interest in said reservoir and dam; that the predecessors in interest in the lands mentioned in William Bayer's said pleading never made claim of interest in said dam and reservoir until February 28, 1941, when said supplemental pleading was filed; that neither William Bayer nor his predecessors in interest ever contributed or offered to contribute any portion of the cost incurred by plaintiff in the construction, operation, and maintenance of said dam and reservoir; that plaintiff, in addition to the amount claimed by him for labor, material, and supplies, in his reply to William Bayer's separate answer, to-wit, the sum of $15,-000.00, expended the sum of $2600.00 in the cost of construction of said dam prior to September 1, 1937, and $750.00 additional during the years 1938, 1939, and 1940, none of which has been repaid to plaintiff by William Bayer, or his predecessor in interest, as to said lands described in William Bayer's said answer; that William Bayer is estopped by his laches and conduct as to the lands claimed by him; that plaintiff has

been in adverse possession for more than ten years, of all the rights acquired under his reservoir permit which William Bayer and his predecessor in interest knew; that the claim of William Bayer is void under the statute of frauds, paragraph "first" § 47-101 W. R. S. 1931.

Plaintiff's reply to the supplemental pleading of Charles J. Bayer was, generally speaking, quite similar to that made to the supplemental pleading of William Bayer. Plaintiff's reply to the answer of the Bar Cross Land and Livestock Company consists mostly of denials; his answer to the company's petition in intervention is to a large extent similar in character with that made to the supplemental pleading of William Bayer. However plaintiff claims that he expended $17,000.00 for *labor* in the construction of said reservoir and dam, and for material $600.00, and that he expended a further sum of $750.00 for maintenance in the years 1938, 1939, and 1940. To the plaintiff's answer to the Bar Cross Land and Livestock Company's petition in intervention, that corporation replied by a series of denials. By general denial Charles J. Bayer traversed plaintiff's reply to Charles J. Bayer's separate answer and William Bayer filed a "traverse" of plaintiff's reply to the latter's "supplemental separate answer" denying the expenditures as claimed by plaintiff and the claims of laches and estoppel.

The case was tried to the court as on the former hearing and additional and substitutional evidence was admitted. Prior to the introduction of the testimony the parties stipulated: "It is stipulated by the plaintiff, through his attorney of record, James Greenwood, and by the defendants and interveners, by their attorneys of record, Arthur Lee Taliaferro and Walter Muir, that all competent evidence now in the record

introduced at the former hearing is to be considered in the final disposition of the case with the same force and effect, for or against, not only the original parties but also the parties who have come in as interveners since the former hearing."

The court rendered a very full and complete judgment in the suit. Preliminary to making findings regarding the evidence appearing in the cause it was recited that "the Court having heard and considered all of the pleadings filed herein and all of the evidence submitted and introduced at this trial, and the evidence submitted and introduced at the former trial; and the Court, upon the application of said interveners and upon the stipulation of the parties hereto, entered into in open Court, having made a personal inspection and examination of the Willow Creek dam site and reservoir, involved in this case;" * * * * "doth say and find" etc.

In the course of that judgment it was found, among other things, that plaintiff Burleigh Binning and his predecessors in interest in the dam and reservoir here involved, the interveners William Bayer and Charles J. Bayer, with one Glenn A. Coleman, Margaret Bayer, wife of Charles J. Bayer, Perry W. Jenkins, and the A. W. Smith Land and Livestock Company, through its president Perry W. Jenkins, entered into an agreement to secure a permit for the construction of a dam and reservoir on the United States Forest Reserve, and mutually agreed to construct the Willow Lake dam and reservoir, this dam to be constructed across the channel of Willow Lake creek, to impound water to be used for the irrigation of lands owned by the parties in this paragraph above named, by means of their canal, known as the Highline Ditch; that said land owners under said mutual agreement built this dam and reservoir, capable of holding approximately

15,120 acre feet of water, and used said storage water beneficially for irrigation purposes; that it was agreed that the unappropriated waters of Willow Lake and Willow Lake Creek thus impounded, and the dam and reservoir aforesaid should be owned by said parties as tenants in common, their respective interests to be "based upon the irrigable acreage respectively owned by each of them."

The court also found that when the aforesaid agreement was made, and during the years 1918 and 1919, and prior thereto, and for several years thereafter, the plaintiff and his predecessors in title owned certain described lands, portions of which were irrigated under said Highline Ditch; that plaintiff was at that time the owner of 1,487 acres of irrigable land within the boundaries of said described tracts of land, and had been granted certificates of appropriation of water out of Willow Lake creek to irrigate them.

It was also found by the court that during the years 1918 and 1919, and until 1930, there existed a ranching and livestock partnership between the interveners William Bayer and Charles J. Bayer; that when the agreement aforesaid was made there were certain lands owned by William Bayer and Charles J. Bayer and their predecessor in title, Margaret Bayer, and certain portions thereof were irrigated under said Highline Ditch by using the natural flow and stored waters of Willow Lake creek and Willow Lake. The judgment then describes how and to whom of the aforesaid partners, upon the dissolution of the partnership in 1930, some of these and other lands also described were divided between the two partners.

Certain described lands, originally owned by Glenn A. Coleman, one of the cotenants of said dam and reservoir of which lands, portions were irrigated under

said Highline Ditch by using the natural flow and stored waters of said Willow Lake creek and Willow Lake, when said mutual agreement was made and during the years 1918 and 1919, were found by the court to have been conveyed to the Boxed K Ranch, Inc., a Wyoming corporation, and thereafter conveyed by it to the interveners William Bayer and Charles J. Bayer, who, for a valuable consideration, became the owners thereof, and all the interest of the said Coleman as cotenant in and to the Willow Lake dam and reservoir and his proportionate share of the unappropriated impounded waters of Willow Lake and Willow Lake creek.

Certain other lands duly described and stated to have been owned by other cotenants in said dam and reservoir, viz, the A. W. Smith Livestock Company and Perry W. Jenkins who were entitled to share proportionately, in the use for irrigation thereon, the natural flow and stored waters of Willow Lake creek and Willow Lake, were found by the court to have been transferred to the intervener the Bar Cross Land and Livestock Company, which became thereby entitled to have and use for irrigation the share of its predecessors in interest in said dam and reservoir stored waters.

The court found also that the intervener William Bayer, and his predecessor in title, in the years 1918 and 1919, when said mutual agreement was made by said land owners, to build the Willow Lake dam, were the owners of 628 acres of irrigable lands within the boundaries of their lands, all of which were duly described by section, township, and range, and had been granted certificates of appropriation out of Willow Lake creek to irrigate the same; that the intervener Charles J. Bayer and his predecessor in title, at the time when the mutual agreement aforesaid was made,

were the owners of 369 acres of irrigable land within the boundaries of the tracts transferred to him and had been granted certificates of appropriation out of Willow Lake creek to irrigate same; in like manner the intervener the Bar Cross Land and Livestock Company and its predecessor in title, when the mutual agreement above mentioned was made, were the owners of 215 acres of irrigable land within the tracts transferred to it and had been given certificates of appropriation out of Willow Lake creek to irrigate the same; and that the interveners William Bayer, Charles J. Bayer, and the Bar Cross Land and Livestock Company, are the present owners respectively of these tracts of land together with the water rights and ditches appurtenant thereto including certain proportionate interests in the aforesaid dam reservoir and impounded waters therein.

It was found too that plaintiff, the interveners and their predecessors in title entered into a mutual agreement to build and did assist in constructing a dam of rock and earth during the years between 1918 and 1930, thereby building the Willow Lake dam for the purpose of impounding a supplemental supply of water for the irrigation of their respective lands; that their interests and the right to use said unappropriated stored water should be based upon the irrigable acreage of said land owners and their predecessors in title; that the plaintiff, Burleigh Binning, in his own name, about March 29, 1922, acquired a reservoir permit from the State Board of Control, but that this should be held by him as trustee for his cotenants or tenants in common, the interveners herein, as it was acquired by him for the benefit of himself and said interveners and their predecessors in title, without their knowledge and consent and for the purpose of attempting to exclude them from the use

of said unappropriated impounded waters in said Willow Lake reservoir; that all of said parties from time to time furnished labor, teams, equipment, and materials, for the construction, during the period between the years 1919 and 1930, of the original Willow Lake creek dam; that from the evidence and also from the court's inspection of the dam site, the said Willow Lake creek dam is found to be built of dirt and rock fill, partly ripwrapped with cobblestones, with concrete in place at the head gate, and is approximately 195 feet long, 10 to 12 feet maximum height from the bottom of the dam to its top, running to zero at the southeast end, with an average height of six feet, average width of 30 to 36 feet at its base, and 10 feet at the top; that there are approximately 750 to 800 cubic yards of rock and dirt fill in the original and completed dam, and between 60 to 80 yards approximately of concrete in place at the head gate.

It was further found by the court that the plaintiff, from time to time, has added to and improved Willow Lake creek dam by the use of his own labor and materials for storing more water in said reservoir and making the structure more permanent; that the plaintiff has thereby expended over and above the proportionate amounts expended by interveners and their predecessors in title, the sum of $5,000.00, and based upon the proportionate interests of the interveners herein, they should now contribute to the plaintiff the sum of $2,250.00, William Bayer being due to pay plaintiff $1,165.84, Charles J. Bayer $683.03, and the Bar Cross Land and Livestock Company $399.13; that when these proportionate amounts are paid their "respective rights, titles and ownership in and to said dam, reservoir and Reservoir Permit No. 3831, Certificate of Appropriation, water rights and right to use said unappropriated water stored

and impounded in Willow Lake creek reservoir should be quieted and decreed."; that the plaintiff is entitled to a 55% interest in and to said reservoir and the impounded water therein, William Bayer an interest of 23.3% therein, Charles J. Bayer an interest of 13.7% therein, and the Bar Cross Land and Livestock Company an interest of 8% in and to said reservoir and water stored thereby; that the parties in interest and the interveners have heretofore in good faith offered to pay plaintiff their proportionate shares of the additional advances and expenses incurred by plaintiff and have offered to reimburse him proportionately in connection with the construction and maintenance of said dam and reservoir; that the respective and proportionate amounts due from the said interveners and cotenants to the plaintiff have never been determined by the parties to this suit or adjudicated by the court.

Finally the court found that,

"Each and all of said interveners shall pay to plaintiff their proportionate share of the said sum of Two Thousand Two Hundred Fifty and no/100 ($2,250.00) Dollars, as herein provided, on or before the 2nd day of January, A. D., 1943; and upon failure to so do, said interveners shall be forever barred from claiming an interest in said reservoir and the waters therein stored and impounded, and in such case, said plaintiff shall be entitled to the poportionate share and interest of said intervener who defaults, and said interest and share in said reservoir and water shall be decreed to said plaintiff."

An appropriate judgment was entered upon these findings and the entry thereof duly made October 17, 1942. The foregoing review of the judgment rendered herein does not undertake to be exhaustive but merely to supply a substantial outline of the many matters determined therein. It appears to have fully accomplished what was directed to be done by the mandate of

this court based upon the opinion heretofore filed.

In considering the findings and judgment of the district court it may very well be recalled at this point that the trial judge personally inspected the dam and reservoir involved in this litgation. That being so it will suffice to mention our previous decision in Davis-Robinson et al. v. Patee 49 Wyo. 470, 57 Pac. (2d) 681, where it was said,

"It is to be observed that in addition to the evidence in the case being in the condition discussed above, the trial judge, as already has been noted ,apparently with the consent of the parties, went to the premises of the owner and viewed the cement work which is the subject of this controversy. Under such circumstances, the findings of the trier of facts are entitled to especial weight and consideration in a reviewing court, and, to say the least, should not be set aside except for very strong and excellent reasons, as the following authorities will demonstrate."

We there reviewed a number of decisions supporting the rule thus announced.

In so far as the rights of the Bar Cross Land and Livestock Company are involved in this lawsuit, and as they were determined by the district court, they need no further attention at this time at our hands as we find in plaintiff's brief the following admission:

"So, the plaintiff, while not desiring to have his position with reference to this right considered as an admission favorable to the Bayer's right to the Coleman interest, is not herein pressing his contention grounded upon the errors assigned to the effect that the Bar Cross Company is not entitled to a proportionate interest based upon 215 acres of land. Available water should serve all beneficial needs insofar as possible, and the Jenkins Ditch having always enjoyed the practically unlimited use of both direct flow and storage water, if adequate consideration be paid therefor, it is better thus to settle the issues between the Bar Cross Company and Binning."

This would seem to be a concession on the part of the plaintiff that the trial court correctly determined the rights of that company as to its proportionate interest in the reservoir and dam and the waters impounded therein, as well as the amount which should. be paid the plaintiff Binning, by that company. This involves, of course, and substantiates the propriety. of the court's finding as to the amount the plaintiff expended on said dam over and above the proportionate amount invested by the interveners and their predecessors in title in said structure. The only reservation in the admission would appear to be that it is not to be taken as a statement favorable to the Bayers' rights to Glenn A. Coleman's interest in said dam and reservoir.

But it is difficult to perceive how the reservation can stand when it is remembered that Binning's, the Bayers' and the Bar Cross Land and Livestock Company's interest in the dam and reservoir aforesaid were calculated on a total percentage basis of one hundred per centum. It would appear that if the 8% interest adjudged to the Bar Cross Land and Livestock Company is correct and should stand, the others should also be upheld, in so far as the amount that each should pay is concerned.

There is much said in plaintiff's brief by way of claim that, at the time the case was tried below on the last hearing, the two Bayers, William and Charles J., were not the owners of undivided half interests in the Coleman rights in the dam and reservoir with its impounded water. In support of this it is pointed out that the warranty deed from the Boxed K. Ranch, Inc., to Charles J. Bayer and William Bayer, dated January 17, 1940, placed on record January 18, 1940, does not, in terms, refer to the water rights or the dam and reservoir interests of Coleman, although it

fully describes the Coleman lands intended to be conveyed. It is said also that the Bayers gave to the Boxed K. Ranch, Inc., at the time the deed last mentioned was delivered, an option to re-purchase said lands, thus making the transaction a mere mortgage. But with these two instruments must be read another —a quitclaim deed from Coleman to the Bayers which was dated back to January 17, 1940, though notarized and delivered the 9th of September, 1941, just a few days before the last hearing was had in this case. This quitclaim deed transferred from Coleman direct to the two Bayers, all the former's interest in "That certain dam and the waters stored thereby, known as Willow Lake Dam, more particularly described as follows: That certain dam situated in Southeast Quarter of Northeast Quarter of Section 19, in Township 35 North, Range 109 West of the Sixth Principal Meridian." Another earlier conveyance had transferred from Coleman the land included in the warranty deed aforesaid to the Boxed K. Ranch, Inc. This instrument was dated June 22, 1937, duly placed of record and, so far as can be told from the present record included with the lands, transferred, "all water and water rights, ditches and ditch rights, all buildings and improvements, and all appurtenances appertaining thereto." Coleman was the president of the Boxed K. Ranch, Inc., a Wyoming corporation.

The parties themselves do not seem to have regarded these transactions as a mortgage according to the testimony in the record, and the quitclaim deed aforesaid would seem to have been given by Coleman to the Bayers to remove any doubt as to the intention of these parties to transfer both the lands and their appurtenant water rights so far as the Willow Lake Dam and the stored water it impounded, were concerned. This was brought out, very clearly, by coun-

sel for plaintiff himself, by cross examination, through the following question to, and answer by Glenn A. Coleman, as a witness for the interveners:

"Q. And you sold your land and your water-rights at the times your attention has been directed to, did you not?

A. Yes."

Again, in Frank v. Hicks, 4 Wyo. 502, 530, 35 Pac. 475, it may be noted this court said, quoting the Supreme Court of California, that " 'The general rule of law is that when a party grants a thing he by implication grants whatever is incident to it and necessary to its beneficial enjoyments.' " It would seem strange that after Coleman had transferred to the Boxed K. Ranch, Inc., his lands and water rights that that company of which he was the president should transfer the land only to the Bayers, when the water rights, both direct flow and reservoir stored waters, were necessary to their beneficial enjoyment. At any rate we think the trial court could properly infer, as it did, that such rights had been passed by Coleman to the Bayers. If Coleman or the Boxed K. Ranch, Inc., did not so transfer these rights, then all the necessary parties were not in the case, but it does not seem that any complaint is made that all were not joined as parties to the litigation on the second hearing of the matter. It is evident the plaintiff knew all about these circumstances and was not injured in any way be these transfers. The proof, indeed, is undisputed that Binning endeavored to purchase the Coleman interest in this dam and reservoir, thus conceding that Coleman had a valuable interest therein. Additionally, plaintiff says in his brief, "the record furnishes approximately the same support for holding that Glenn A. Coleman was one of the original co-owners as it does in so holding in behalf of William Bayer." It was settled,

in the first hearing in this case and by the opinion of this court thereon that William Bayer had an original interest in said dam and reservoir. But as we have heretofore noted, the case was remanded to determine what the amount of that interest was, as well as what the interests really were held by the plaintiff and all others who might properly appear as interveners, when everyone was before the court who could legally claim such an interest. As this court said, to repeat in substance the quoted statement given above, the district court did not determine in the first hearing, "the total proportionate amount of the stored amount to which either the plaintiff or the interveners were entitled, that amount depending on the amount of water to which other parties were properly entitled." The amount to which each is entitled would be diminished proportionately when others were admitted. Obviously this was the only fair and equitable method of disposing of the matter.

It is contended that Charles J. Bayer should not have been adjudged any interest in the dam and reservoir, but as we have seen, he obtained an undivided one-half interest in the Coleman lands. Additionally, he obtained other lands from his brother, William, who, as his partner in the land and livestock business long before the years 1918-1919, and during those years until the year 1930 when the arrangement seems to have been dissolved, farmed and operated the lands and water rights appurtenant thereto. This partnership agreement between the two brothers was oral and was as William Bayer testified, "that I would take the charge of the ranch and work the ranch and develop it, and he would go out and work, and we would be partners, and we were partners on everything that dealt with the ranch, fifty-fifty on all operations."; William Bayer stated also that he farmed

in 1919, the Charles J. Bayer homestead, his own homestead, that of his brother's wife, Margaret, and "we had additional land that we had purchased at the beginning too"; also that "Charlie" furnished a "big share" of the money to conduct the partnership, pay the taxes on the land involved, and the employees who worked on the dam, at William Bayer's direction. The latter, as the active partner in the arrangement, made these payments, while Charles J. Bayer was elsewhere employed, and turned over monies from his salary to William to aid in the conduct of the ranch. There seems to have been considerable documentary evidence to establish the existence of the partnership arrangement, such as income tax returns, etc. We, therefore, under the proof as it now stands can perceive no error in the court's finding that Charles J. Bayer established that he, through the ownership of the lands, obtained from Coleman and his brother, William Bayer, had an interest in the dam and reservoir as adjudged.

It is claimed that Binning should have a greater interest in the aforesaid dam and reservoir than by the judgment was allowed him. But his petition in the lawsuit shows direct flow water rights with priorities before the year 1918-1919 for some 1,427 acres. Mr. Binning testified that he irrigated, under his natural flow rights, "right around fourteen hundred acres." Interveners concede that he was entitled to and held water rights for 60 additional acres. The district court would therefore appear to have correctly based its calculation of plaintiff's interests on an acreage of 1,487.

It is asserted that the court erred in not allowing more than was adjudged to plaintiff for the amount of money expended by Binning over and above what the interveners contributed, and for which he should

be reimbursed by them. The plaintiff contends that he expended over $16,000.00 for building and maintaining the dam aforesaid between the years 1918-1919 and 1941. But the evidence as to the cost of the dam was conflicting. Upon measurements of the structure taken—and as noted above in the court's findings the size thereof was fully described in the judgment—three civil engineers, Baldwin, Feltner, and Perry W. Jenkins, testified that the cost of the dam was not to exceed $3,300.00, which figures were those of Baldwin; Feltner's were $2,072.50, and Jenkins said that the cost of the dam was "well under" $3,000.00, that figure giving a liberal price for moving of rock, dirt, and yardage of the structure. There was no expert testimony introduced on behalf of the plaintiff to the contrary.

There was other evidence in the case which indicated the cost of the dam to have been far less than the amount claimed by the plaintiff. In addition to this we have the further fact that the trial judge viewed the dam and reservoir and made his findings which should be treated as stated above in the Davis-Robinson v. Patee, case. It will be remembered that it was pointed out in the former opinion of this court filed in this case, that the district court was confronted with a difficult task in disposing of the issues in the case, on the first hearing. The record was and is, in many respects, in an unsatisfactory condition, which was not surprising in view of the fact that the testimony as to the construction of the dam and reservior was based upon the memory of witnesses concerning matters which occurred many years before —a fact that usually does not make for certainty and accuracy.

The contention is made that plaintiff was not allowed interest prior to the judgment on the amount

of money found to be due him. But until the judgment, now under review, was rendered, no one knew how much each of the parties was legally required to pay. That being so it is sufficient to call attention to the fact that 33 C. J. 211, § 71, says that "the general rule, as elsewhere stated in this work, is that interest is not recoverable upon unliquidated demands, but is allowable only after such demands shall have become merged in a judgment. In order to recover interest there must be a fixed and determinate amount which could have been tendered and interest thereby stopped." See also the recent case of Johnson v. Hanover Fire Insurance Company, 59 Wyo. 120, 137 Pac. (2d) 615, and cases there cited.

We have not undertaken to discuss all the factual points advanced and argued by appellant, though we have examined them carefully in the light of the record evidence and the findings of the district court. Our conclusion is that there is substantial evidence in the record to sustain those findings.

Questions of laches, estoppel and those involving the statute of frauds were all considered at length and set at rest by the prior opinion herein. We do not find it necessary to again consider those matters. In view of the state of the record, the well known rule that findings of the trier of facts on conflicting evidence will not be disturbed here when there is substantial evidence tending to support the judgment, and that the district court, as we see it, in properly giving effect to the mandate of this court, accomplished a full settlement of the subject matter of the litigation by its judgment rendered herein, that judgment should be and it is affirmed.

*Affirmed.*

KIMBALL, C. J., and BLUME, J. concur.