Noel Tyler HOLST, and Jacqulyn Holst,
Appellants (Plaintiffs),

v.

Fred I. GUYNN, and Iris K. Guynn,
Appellees (Defendants),

Fred I. GUYNN, and Iris K. Guynn,
Appellants (Defendants),

v.

Noel Tyler HOLST, and Jacqulyn Holst,
Appellees (Plaintiffs).

Nos. 84–95, 84–96.

Supreme Court of Wyoming.

Feb. 19, 1985.

Rehearing Denied March 13, 1985.

Mark L. Reynolds, Lovell, for appellants in No. 84–95 and appellees in 84–96.

Ronald P. Jurovich and Charles K. Moss, Thermopolis, for appellees in No. 84–95 and appellants in 84–96.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

BROWN, Justice.

The Holsts initially brought this action against the Guynns seeking refund of the earnest money paid by Holsts to Guynns to purchase a home after the Holsts were unable to obtain financing. The Guynns filed a counterclaim seeking damages for breach of contract. The trial court found generally for the Guynns. The Holsts bring this appeal alleging error in the trial court's refusal to grant them the return of the earnest money. The Guynns cross-appeal alleging error inasmuch as the trial court off-set the counterclaim award to the Guynns by the profit they realized upon the resale of the house to a third party.

Since we find that the Holsts are entitled to the return of the earnest money paid by them to the Guynns, we need not look at the claims asserted by the Guynns in their cross-appeal.

The Holsts raise the following issues on appeal:

"I. Did the court err in imposing a positive duty upon plaintiffs to actively seek alternative financing?

"II. Did the court err in failing to award interest to plaintiffs for the period of time their earnest money was held by appellees after appellees were obligated to return the same to appellants?"

The facts show that sometime in August, 1979, the Holsts agreed to purchase a house from Guynns. The Holsts tendered $12,000 to Guynns as earnest money and agreed to apply to the Veterans Administration (V.A.) for a loan for the balance. The Holsts subsequently applied to the V.A. for a loan which was approved by letter dated November 16, 1979, subject to conditions, one of them being that "There being no substantial reduction in income or increase in expenses between the date of your application and the time of loan closing."

Almost one month later, on or about Friday, December 14, 1979, Mr. Holst was advised by his manager that he was being terminated from his employment. Shortly thereafter, Mr. Holst informed the V.A. that his job was being terminated, and the V.A. advised him his loan application would be denied. On December 21, 1979, the V.A. was formally notified by letter from Holst's employer that his employment was terminating effective December 31, 1979. On January 7, 1980, Mr. Holst was notified by letter that the V.A. could not approve his loan because his income was inadequate to make the loan payments.[1]

Mr. Holst made inquiry as to other sources of financing, but was unsuccessful in his endeavors. During the latter part of December, Holst informed Guynn that he was unable to obtain any financing to complete the deal and requested the return of his earnest money. Thereupon, Guynn informed Holst that the money had been spent, but according to Holst, Guynn indicated the money would be returned to Holst once the house was resold.

---

1. The Guynns suggest in their brief that Holsts' bad faith was manifest because Mr. Holst informed the Veterans Administration that he had lost his job. This is indeed a peculiar notion. Holst, in fact, had a positive duty to notify the V.A. if there was a "substantial reduction in income." Had Holst not notified the V.A. that he had lost his job he certainly would not have been acting in good faith with the V.A.

During this period of time, Holst also sought other means of employment but was unsuccessful. Therefore, he decided in the early part of January, 1980, to attend college. The earnest money was never returned by Guynn and this suit followed.

## I

The first issue raised by appellant Holst is whether it was error for the trial court to impose "a positive duty upon [Holst] to actively seek alternative financing." The court found that Holst did not actively seek financing from other sources once the V.A. loan was disapproved and thereby demonstrated a lack of good faith. The applicable provisions of the sales contract read:

"The Buyers shall apply to the Veterans Administration for a direct loan * * * to purchase the aforedescribed realty and the parties realizing that circumstances may be such that said lending institution may not grant said loan; therefore, IT IS SPECIFICALLY UNDERSTOOD AND AGREED by and between the parties as follows:

"1. That in the event the Buyers' loan is not approved by the lender, the Sellers agree to return to the Buyers the consideration initially paid as earnest money. However, nothing in this paragraph shall be construed to deny Buyers the right during the term of this Agreement to apply for a loan through a conventional lending institution to purchase the real property."

■ Indeed the trial court found, and we agree, that the contract provisions are clear and unambiguous. When the language is clear, we look no further than the four corners of the contract to determine the intent of the parties. *Rouse v. Munroe*, Wyo., 658 P.2d 74 (1983); and *Busch Development, Inc. v. City of Cheyenne*, Wyo., 645 P.2d 65 (1982).

■ However, we cannot agree with the trial court that Holst violated the agreement of the parties when he failed to seek or obtain alternative financing after his V.A. loan application was denied. The language of the contract merely said, "nothing in this paragraph shall be construed to *deny* Buyers the right * * * to apply for a loan through a conventional lending institution * * *." (Emphasis added.) We cannot conclude that Holst had a legal duty from these words to seek alternative financing.

■ We are aware of the general legal proposition that when an earnest money agreement provides for payment of the balance of the purchase price conditioned upon the securement of a loan, an implied condition is imposed upon the vendee to use reasonable diligence to procure the loan. See, e.g., *Martin v. Dillon*, 56 Or.App. 734, 642 P.2d 1209 (1981); and *Anaheim Company v. Holcombe*, 246 Or. 541, 426 P.2d 743 (1967). But the contract language in the present case expressly provided that the earnest money would be refunded if the Holsts did not obtain a V.A. loan. Immediately following was the provision quoted above saying nothing would prevent the buyers from seeking conventional financing. It is clear that the parties' main reliance was upon the buyers successfully obtaining a V.A. loan; upon a failure to obtain the V.A. loan, the earnest money would be refunded. As mentioned earlier, Holst made inquiry as to alternative sources of financing, all to no avail. As a practical matter, it is doubtful that Holst could have obtained financing from any source while he was unemployed.

■ The contract was rescinded upon Holsts' failure to obtain financing. As we stated in *Hagar v. Mobley*, Wyo., 638 P.2d 127, 132 (1981):

"The rescission of a contract is in effect a repeal or a nullification of a contract. When it is granted, the contract is annulled and the parties are restored to status quo; that is, an attempt is made to place the parties in the positions they would have been in, but for the contract. See 17 Am.Jur.2d Contracts § 512 (1964)."

See also 66 Am.Jur.2d Restitution and Implied Contracts § 10 (1973). In any event, we find that the Holsts did not violate the

sales agreement and are therefore entitled under the agreement to the return of their earnest money.

## II

We now turn our attention to the second issue raised by Holst as to whether interest should have been awarded to Holst for the time Guynn held the earnest money after Holst informed Guynn of his inability to obtain financing and requested its return. Holst cites us to *Mader v. James*, Wyo., 546 P.2d 190 (1976), as authority for the award of interest. In that case we held that a buyer of real estate was entitled to the return of his deposit when the deal fell through. Interest on the deposit was also awarded and it was stated:

"Interest is recoverable on liquidated but not on unliquidated claims. A liquidated claim is one readily computable by simple mathematical computation. *United Pacific Insurance Co. v. Martin and Luther General Contractors, Inc.*, Wyo. 1969, 455 P.2d 664, 677. Not even the simplest arithmetic is here necessary. The amount of Fanning's claim was a sum certain—an amount stated. It became due on the date that Fanning accepted James' rescission of the contract. The record shows the first demand for the refund to have been made on October 3, 1973, and to have been made repeatedly thereafter. Fanning is entitled to interest at the rate of seven percent per annum from that date to judgment and at the judgment rate of ten percent thereafter. * * * " Id. at 195–196.

 It is well established in this state that prejudgment interest is recoverable on liquidated but not on unliquidated claims, a liquidated claim being one which is readily computable by basic mathematical calculation. *Rissler & McMurry Company v. Atlantic Richfield Company*, Wyo., 559 P.2d 25 (1977); and *Zitterkopf v. Roussalis*, Wyo., 546 P.2d 436 (1976). In *Rissler & McMurry*, supra, at 31, 33, we stated:

"Some contracts specifically provide for interest. Those cases can be decided upon their contract terms and regarded

as compensation for the use of money or for the extension of credit. The contract in such instance itself governs interest by way of compensation or damages for breach. We are not concerned with that type of contract. We are concerned, as here, with the contract that is silent with respect to interest. While we have statutory provision for the allowance of interest, it does not precisely indicate its application to recovery as a result of litigation.

\* \* \* \* \* \*

"Even though the existence of an unliquidated counterclaim or set-off necessarily puts the amount payable in doubt, it is well settled that it does not render the claim itself uncertain or deprive the claimant of the right to prejudgment interest. [Citations.] Mere differences of opinion as to the amount due do not preclude prejudgment interest nor do disputes as to liability. [Citation.]"

 We have previously held § 40–14–106(e), W.S.1977, applicable in determining the rate of prejudgment interest awarded in the absence of a contractual provision to the contrary. *Rissler & McMurry Company v. Atlantic Richfield Company*, supra. Section 40–14–106(e), reads:

"If there is no provision of law for a different rate, the interest of money shall be at the rate of seven percent (7%) per annum."

Prejudgment interest is recoverable from the date Guynn received notice of Holsts' inability to obtain financing and their desire to have the earnest money refunded. The facts show that Holst telephoned Guynn on December 14, 1979, the day his job was terminated, stating that the V.A. loan could not be consummated due to his unemployment. After attempting to obtain alternative financing without success, Holst telephoned Guynn and told him of his failure to obtain other financing and requested the return of the earnest money. Under the terms of the agreement, the sellers agreed that the earnest money would be returned to the buyers "in the event the Buyers' loan is not approved by

the lender." The word "lender" refers to the V.A. in the previous paragraph of the agreement where it is said, "the parties realizing * * * that said lending institution may not grant said loan."

However, the exact date upon which Holst informed Guynn of his desire to have the earnest money returned is unclear. Holst testified it was sometime "during the last week of December," (1979), but did not specify the precise date. We have previously held that a party must be informed of the demand for return of the earnest money before interest begins to accrue:

"* * * The debtor must receive notice of the amount due before interest starts to run. A defendant cannot be in default if he is not informed of what to pay. There must be a fixed and determined amount which could have been tendered and interest thereby stopped. *Binning v. Miller*, 1944, 60 Wyo. 114, 146 P.2d 527. If the amount of the indebtedness or the amount owing can be calculated and determined from statements rendered and found to be correct, it is a matter of mere calculation. [Citation.]" *Rissler & McMurry Company v. Atlantic Richfield Company*, supra, at 34.

Since we are unable to pinpoint the exact date that Holst requested the return of the earnest money, we must remand this portion of the appeal in order to establish the date Guynn received notice of the demand. When that date is determined, Holst will be entitled to prejudgment interest on the earnest money at the rate of seven percent (7%) per annum from the date of demand for return to the date of judgment, and at the judgment rate of ten percent (10%) per annum thereafter. Section 1–16–102, W.S. 1977, reads:

"(a) Except as provided in subsection (b) of this section, all decrees and judgments for the payment of money shall bear interest at ten percent (10%) per year from the date of rendition until paid.

"(b) If the decree or judgment is founded on a contract, and all parties to the contract agreed to interest at a rate less than ten percent (10%) per year, the rate of interest on the decree or judgment shall correspond to the terms of the contract."

Reversed and remanded for the taking of further evidence and entry of a judgment in conformity with this opinion.