DAVIS-ROBINSON ET AL. v. PATEE
(No. 1919; May 5, 1936; 57 Pac. (2d) 681)

For the plaintiffs in error, there was a brief by *John C. Pickett* and *Allen A. Pearson* of Cheyenne and oral argument by *Mr. Pearson.*

For the defendant in error there was a brief and oral argument by *William O. Wilson* of Cheyenne.

RINER, Justice.

In this case, the action which culminated in a judgment in his favor was brought by Fred Patee, as plaintiff, against Josina Davis-Robinson, as defendant, in the district court of Natrona County. This judgment we are asked to review by proceedings in error in behalf of the party last mentioned. For convenience, subsequently herein the plaintiff will generally be referred to as the "contractor" and the defendant as the "owner."

Under date of July 22, 1930, pursuant to an agreement partly written and partly oral, the contractor undertook to do certain cement and patch plaster work for the owner in the basement of her house and the sun porch thereof and also outside of the house, at the stated price of $400.00. Additionally he did certain extra labor and furnished extra materials for items not included in the original agreement, which increased the total amount claimed by him to be due, to the sum of $595.67. The owner having declined to pay anything upon the completion of the work, the contractor brought suit to recover that amount.

The owner in her answer, in addition to denying the agreement relied upon by the contractor, claimed that the work done by him was not performed as it should

have been and was entirely worthless to her. Accordingly she asserted that she owed him nothing.

In that part of the contract between the parties which was in writing and in the form of a letter addressed by him to the owner, the contractor stated that he would "furnish all the cement and sand and run the forms that are set or that you will have set, according to the specifications furnished by Mr. Engelke, * * * * * * doing all the work in a thorough, workmanship manner." Engelke was a cement contractor who had previously submitted a bid to the owner for doing most of the work now involved and which bid she declined to accept.

The trial was to the court, and upon the conclusion of the evidence, after both parties had rested, the court announced: "I think I will hear this other matter, then I am going to take a look at that work myself." The court reporter additionally stated in the transcript that: "The court later inspected the work in controversy."

Thereafter the court entered the judgment complained of, in favor of the contractor, for a sum less by $30.00 than the amount claimed by him, i. e., the sum of $565.67, together with interest and costs. This judgment also recites that the court, after the submission of the cause without argument, "thereafter viewed the property and the work constituting the subject matter of this cause and the materials furnished therein." Among the special findings set forth by the court preliminary to the judgment rendered were the following:

"That the plaintiff has fully and completely performed the contract entered into between plaintiff and defendant Josina Davis-Robinson and is, therefore, entitled to recover the sum of Four Hundred and no/100 ($400.00) Dollars.

"That plaintiff regularly and properly performed certain extra work in addition to the express contract

between plaintiff and defendant in the amount of One Hundred Sixty-five and 67/100 ($165.67) Dollars.

"That all of the work done by plaintiff was done according to the specifications furnished to another contractor and was done in a thorough and workmanlike manner."

Counsel for the owner in his brief states that the questions to be resolved at this time, from an examination of the record, are: Was the work done in a workmanlike manner, as the contractor stated in his letter aforesaid he would do it, and, were the specifications as furnished to Mr. Engelke carried out?

It is obvious that the answers to these questions depend upon a determination of fact issues solely. The district court had the witnesses of the several parties before it. We have but the written record of their testimony. The owner concedes in her brief that, "the first impression," upon examining the transcript of the testimony in the case, "may be that there is a conflict" between that produced on behalf of the contractor and that submitted on her behalf. In that connection, she refers to the rule of appellate procedure so generally applied heretofore by this and other reviewing courts of the nation, that where there is substantial evidence to support the finding of the trial court, the evidence in the case being in conflict, that finding will not be disturbed on appeal or error. But it is urged that there is "no decided conflict in the testimony," and that the judgment "is against the great weight of evidence in the case."

We are, however, obliged to conclude, after a careful study of the record, even in the light of the painstaking analysis and survey of the statements of the several witnesses and their qualifications in the case, submitted by counsel, that the "first impression," referred to above, is likewise our last impression. We think that there is a sharp conflict between the witnesses for the

respective parties on both the questions above suggested, as well as concerning just what the specifications "furnished to Mr. Engelke" were; that there is substantial evidence to support the findings of the trial court, and that it cannot accurately be said that the "great weight of evidence" in the case is against those findings and the judgment given by the district court. The sole issue tendered by the owner's answer, touching the character of the work done, was that it was utterly worthless to her, and yet she admitted on the witness stand that some of it was satisfactory, the curbing on the driveway and the walk or areaway on the west side of the house. The trial court, however, reduced the claim of the contractor, as has been noted.

No useful purpose, that we can see, either as furnishing a precedent or otherwise, would be accomplished by an elaborate discussion of the evidence in detail. We deem it quite sufficient to state our conclusions concerning it. We may mention, however, that considerable argument and testimony for the owner is devoted to the claim that the concrete used by the contractor in the work was not a six to one mixture, although he and those who did the work testified that it was. The owner's witnesses deduced their adverse conclusion as to the insufficiency of the amount of cement in the mixture from the statement of the contractor as a witness that 54 yards of sand and gravel to 110 sacks of cement was used in the work. But the contractor testified, without dispute, that more than half of the sand was used not with the cement, but as a cushion to prevent moisture from coming up to the floor from the earth below. One of the owner's witnesses, too, when questioned as to whether this use of the sand would alter his opinion as to the amount of the cement used being incorrect, responded, "It sure would."

Much, also, is said about the drain in the kitchen being lower than the surrounding floor. But the testi-

mony in behalf of the contractor is that it was put in that way because the owner required the floor to be built up to the baseboard of the room. There is a conflict in the evidence about this, but it simply brings us back to the rule already mentioned governing conflicting testimony in this court. The contractor further testified, without contradiction, that an additional cap could be put over the drain orifice, thereby obviating the necessity and expense of raising the drain and its fittings.

It is to be observed that in addition to the evidence in the case being in the condition discussed above, the trial judge, as already has been noted, apparently with the consent of the parties, went to the premises of the owner and viewed the cement work which is the subject of this controversy. Under such circumstances, the findings of the trier of facts are entitled to especial weight and consideration in a reviewing court, and, to say the least, should not be set aside except for very strong and excellent reasons, as the following authorities will demonstrate:

Where a jury had inspected the item in controversy, in Davis v. Jenney, 1 Metcalf's Mass. Rep. 221, Chief Justice Shaw used this language concerning the weight to be given its verdict in such case:

"We have no doubt that the verdict in this case, is open to the inquiry, whether it was against the weight of evidence, and liable to be set aside on that ground. The authority of the court to set aside a verdict does not depend upon the nature and quality of the evidence, upon which the jury have found it; though it often happens, that the character of the evidence is such as to afford the jury much better means of judging of it, than the court can have of reviewing it; as where much depends upon localities, and the jury have a view; or upon minute circumstances, and there is conflicting testimony; or upon the credit of a witness, who is strongly impeached by one set of witnesses, and sup-

ported by another. In all such cases, the consideration, that the jury had means of judging of facts, which cannot afterwards be laid before the court, in their complete strength and fulness, will always have a prevailing and often a decisive influence upon the judgment of the court, in support of the verdict."

2 Bancroft's Code Practice and Remedies, 1702, Section 1226, says that: "Irrespective of whether the facts disclosed on a view are substantive evidence, it is unquestioned that such a view adds weight to the findings of a lower court."

So in Juanto v. Wright, 95 Or. 420, 187 Pac. 1036, citing and quoting from a number of its former decisions, the court concluded that: "Whether or not the facts disclosed on such a view of the premises are substantive evidence which the court had a right to consider independently, there may be a question. But it is well settled that such a view adds to the advisory weight of the findings of the court below."

The Supreme Court of Colorado in Board of Commissioners of Ouray County v. Board of Commissioners of San Juan County, 68 Colo. 428, 190 Pac. 666, seems also to have been guided by similar ideas on the subject, saying:

"Moreover it appears from the record that the trial judge was familiar with the country involved in the dispute. That prior to making findings and the entering of the decree he viewed the locality in question with the knowledge and consent of both parties, and with attorneys representing both sides participating therein. Under these circumstances it cannot be said that the trial court is no better able to pass upon the evidence than is this court."

In Folmar Mercantile Co. v. Town of Luverne, 203 Ala. 363, 83 So. 107, the court said: "It thus appears that the only question affected by the trial judge's view of the premises was with respect to complainant's damage by reason of a diversion of the flow of rain-

water from its natural courses. This finding, made upon actual view, ought not to and will not be disturbed by this court." To the same effect is the later case of Whatley v. Nesbitt, 204 Ala. 334, 85 So. 550, where the evidence was in conflict.

After reciting certain facts bearing upon the character of the land involved, as to whether it was urban or agricultural in character, in Witham v. City of Lincoln, 125 Neb. 366, 250 N. W. 247, the court continued: "These and other facts, to determine whether the plaintiff's property is urban or agricultural in character, were personally examined into by the trial court when it made a personal inspection of these and adjoining lands. The finding of the trial court in relation thereto is entitled to great weight." See also the subsequent and comparatively recent case of Independent Stock Farm v. Stevens, 128 Neb. 619, 259 N. W. 647.

In Haber v. Paramount Ice Corporation, 264 N. Y. 98, 190 N. E. 163, the New York Court of Appeals seems to have ascribed a stronger effect to the finding of fact made by the trier thereof in connection with a view of the matter in dispute than appears in the foregoing authorities, for it was there said:

"Appellant contends that, because the learned trial justice, by consent of parties, viewed the premises and based his decision in part on such inspection, the Appellate Division was, as a matter of law, compelled to accept his findings of fact as conclusive. This might be so if the question were as to the existence of a particular fact. Garvey v. Long Island R. Co. 159 N. Y. 323, 54 N. E. 57, 70 Am. St. Rep. 550. Thus in Braisted v. Brooklyn & R. B. R. Co., 46 App. Div. 204, 205, 61 N. Y. S. 674, Cullen, J., writing for the court said: 'The learned counsel for the appellant contends that the evidence does not show that there was any violation of the injunction. He admits that the work of dredging and filling was renewed, but asserts that it was carried on in such a manner as not to cast any mud or offensive materials on the plaintiff's land. By the re-

cord before us it appears that the referee, on the consent of both parties, made a personal inspection of their premises. As his report is the result of such inspection, as well as of the testimony taken by him, it is impossible for us to review his determination founded on his personal observation.' "

And in Dalton v. Selah Water Users' Association, 67 Wash. 589, 122 Pac. 4, the court expressed its views on the subject thus:

"Where the trial judge views the premises upon the stipulation of the parties, it, of course, becomes his duty to weigh the evidence in the light of all pertinent facts that fall within his observation; and in such cases, if there is a substantial conflict in the testimony, this court would be reluctant to interfere with his finding."

All things considered, the only course left open to us, as we see it, is to affirm the judgment, and that will be done.

*Affirmed.*

KIMBALL, CH. J., and BLUME, J., concur.