HUBER v. DELONG ET AL.

(No. 2092; May 29, 1939; 91 Pac. (2d) 53)

242

For the plaintiff in error there was a brief by *E. E. Enterline* and *Madge Enterline, S. S. C. Chilcote* and *D. W. Ogilbee* of Casper, and oral argument by *Mr. Enterline.*

For the defendants in error there was a brief by *Hagens* and *Wehrli* of Casper, and oral argument by *Mr. Wehrli.*

244

KIMBALL, Justice.

The proceeding is for review of an order vacating a temporary injunction.

The plaintiff in error, as plaintiff below, commenced the action on May 24, 1938. The petition stated three causes of action. The first was to quiet title to lots 16 to 20, inclusive, in Block 6, in the East Burlington Addition to the City of Casper, alleging that plaintiff was the "owner and in the possession" of the property, and that the defendants claimed an adverse estate or interest therein but had no estate or interest either in law or equity.

The second cause of action was for damages. It was alleged that on May 17, 1938, defendants "broke and entered upon the lands and the lands and the buildings and structures thereon situate, and have continuously" thereafter trespassed thereon, and "have taken down, and have demolished certain buildings upon said premises, and have exposed certain personal property of the plaintiff (and his tenants) therein and thereon to loss, destruction and damage, and have removed certain buildings, and parts of buildings, from the said premises, and then and there disturbed and continue to disturb plaintiff in the use and occupation of the said premises, and prevented him and continue to prevent him from the enjoyment of the same as he otherwise would have, all being to him damage in the sum of $1,000."

The third cause of action was for injunction. It repeated the allegations of defendants' unlawful entry on the property, and alleged that they "do continue to break and enter upon said lands and the buildings and improvements thereon * * * and are continuing to destroy, demolish and remove the buildings and other structures and improvements upon said lands, and to expose personal property of the plaintiff (and his tenants) therein and thereon, to loss, destruction and damage." It was alleged that defendants were insol-

vent; that unless restrained they would continue "the said unlawful entry upon and damage to the property of the plaintiff," and that "plaintiff's use and enjoyment of said real estate will be impaired and irreparably prejudiced and injured." It was further alleged that the mentioned improvements were certain buildings, machinery etc. for the refining of petroleum, and that "the value of the materials therein is but a small part of the value of the entire plant and structure erected and in place."

The prayer was that the title to the property be quieted in plaintiff; that he recover $1,000 damage "for the destruction, demolition and removal of the buildings and improvement * * * and for the loss, damage and destruction of the personal property," and for injunction.

The injunction order was made at the time of commencing the action on the petition positively verified, without previous notice to defendants. The order, which follows the prayer of the petition, provided in substance:

That defendants be restrained during the pendency of the action (1) "from in any manner whatsoever interfering with the plaintiff's possession" of the property; (2) "from removing from said premises any personal property thereon or therein," and (3) "from demolishing, destroying, or in any way whatsoever injuring the building and structures, or parts of them, situate on said described premises or from in any manner interfering with the said real estate, buildings, thereon situate or said personal property thereon and therein."

Thereafter defendants filed a motion to vacate the injunction. The grounds, briefly stated, were:

1. That defendants owned and were in actual, exclusive and peaceable possession of the property when the action was commenced.

2. That in 1934 the property had been acquired by Natrona County on a sale for delinquent taxes, and May 5, 1938 the county had sold and conveyed the property to defendants for $250, when there was due to Natrona County delinquent taxes amounting to $550, and that plaintiff had not paid or tendered any part of said taxes to defendants or to the county.

After a hearing on affidavits and other evidence the motion was granted and the injunction vacated by an order which plaintiff brings here for review by proceeding in error.

A brief summary of the evidence will show the facts: In 1930 the legal and record title to the lots in question was in trustees of a Building and Loan Association who, on October 15, 1930, conveyed the lots to plaintiff by quit claim deed which he did not record until May 26, 1938, two days after this action was commenced. The plaintiff never listed the lots for taxation, and the taxes for 1930 and subsequent years were not paid. In 1931 the lots were sold to the county at a tax sale for the taxes for 1930. In 1930 or 1931 plaintiff erected on the lots a building which was not described except by showing that it was for an oil refinery. When or for how long the refinery was operated was not shown, but the evidence indicates that for a long time before the action was commenced the refinery had been idle though some of the refinery equipment and perhaps other personal property remained on the lots. The building was declared a fire hazard and a public nuisance by an ordinance of the city, passed April 4, 1938. Plaintiff had no tenant, caretaker or watchman on or about the lots and was not in possession except by having property there. Defendants knew plaintiff had built the building and owned or controlled the refinery equipment, but denied having knowledge or notice that plaintiff owned the land. In 1934, pursuant to the sale in 1931 for taxes for 1930, the lots were deeded to

Natrona County by a tax deed record June 7, 1934. Before April 2, 1938, defendants examined the records in the office of the county clerk and found no evidence of title in plaintiff. April 2, 1938, for the consideration of $25 the trustees of the Building and Loan Company gave a quit claim deed of the lots to defendants, and on May 5, 1938, for the consideration of $250, Natrona County gave defendants a similar deed. Each of these deeds was recorded on the date it was given. The taxes from 1930 to 1938, with penalties and interest, amount to $550. On May 17 or 18, 1938, defendants, believing they owned the lots, took peaceable possession thereof, started tearing down the building thereon, and were engaged in that actively when stopped on May 25, 1938, by service of notice of the temporary injunction. They recognize plaintiff's right to the refinery equipment, and other personal property. It was stipulated that the county assessor had failed to make oath to the assessment roll for 1930. This defect invalidated the tax sale of 1931 (Brewer v. Kulien, 42 Wyo. 314, 294 Pac. 777), but did not make the taxes illegal or unjust (Horton v. Driskell, 13 Wyo. 66, 77 Pac. 354). The lots were subject to taxation, but plaintiff has not paid or offered to pay anything to defendants as claimants under the tax deed.

In the tax deed to Natrona County the property is described as "East Burlington Lots 16 to 20 Inc. Blk 6, situated in the County of Natrona and State of Wyoming," omitting to state that East Burlington was an addition to the City of Casper. The defendants were permitted, over objection, to introduce extrinsic evidence showing that the only East Burlington in the county was the East Burlington Addition to the City of Casper. This evidence was admissible, and did not vary the terms of the writing in violation of the parol evidence rule. See cases cited in note, 68 A. L. R. 4. In Cordua v. Guggenheim, 274 N. Y. 51, 8 N. E. (2d)

274, after stating that there is a conclusive presumption that a deed contains every agreement relating to the nature and extent of the property conveyed (see Cary v. Manfull, 41 Wyo. 476, 287 P. 433), the court continued: "Where the language of the deed is ambiguous, however, parol evidence is admissible to show the intent of the parties. * * * Parol evidence is always admissible to apply a writing to its subject. The general description of property in the deed is often vague, uncertain and general. Oral evidence is admissible to enable the court to determine the application of the general language of the deed to the particular land to which it was intended to refer." See discussion in Yellowstone Sheep Co. v. Diamond Dot Livestock Co., 43 Wyo. 15, 297 P. 1107, where extrinsic evidence was received in aid of an ambiguous description of personal property.

Defendants contend that in vacating the injunction the judge may have decided that they had the superior title because their deed of April 2, 1938, was recorded before plaintiff's earlier deed from the same grantors, and there was evidence to justify a finding that defendants were purchasers in good faith. See § 97-135, R. S. 1931. They further contend that the injunction should have been vacated because it prevented the tearing down of a building that had been declared a fire hazard and a nuisance by city ordinance. These contentions need not be considered. We think the order vacating the injunction may be sustained on less doubtful grounds.

The petition contains allegations indicating that defendants were in possession of the property after an unlawful entry. The evidence shows that they entered peaceably and under claim of title. It is not clear that an action to quiet title was plaintiff's proper remedy. Usually ejectment, when that remedy is available, is the proceeding which should be resorted to by an owner

out of possession. See R. S. 1931, §§ 89-3901, 89-3903;
Chesney v. Valley Livestock Co., 34 Wyo. 378, 388, 244
P. 216, 219. Nor is it clear that the injunction was not
used to take property out of possession of one party
and put it in that of another, contrary to principles
discussed in Casper Wyoming Theaters Co. v. Rex In-
vestment Co., 37 Wyo. 357, 261 P. 208, and Alaska
Development Co. v. Brannan, 40 Wyo. 106, 275 P. 115.
See, also, People ex rel. Messler v. Simonson, 10 Mich.
335. The evidence justified a finding that plaintiff was
not threatened with any great or irreparable injury by
defendants' mere possession of the property which was
not being used by plaintiff. The personal property was
probably safer under defendants' occupancy than it
was before when no one was there, except perhaps that
some of it was more exposed by tearing down the build-
ing. The judge may have thought that the only sub-
stantial damage caused by defendants was the tearing
down of the building. The injunction, however, was
not limited in accordance with that view. It had the
effect of transferring possession of the property from
defendants to plaintiff. There was doubt even on the
question of appropriateness of injunction as a preven-
tive remedy. The petition in stating the second cause
of action alleged that the buildings had been torn down.
The allegations in the third cause of action were prob-
ably lacking in that particularity and detail required
in a petition when used as an affidavit for temporary
injunction. See Anderson v. Englehart, 18 Wyo. 409,
420, 108 P. 977. Details were not supplied on the hear-
ing of the motion to vacate. The building was neither
described nor valued, and it was not shown whether
any substantial part of it remained when the injunc-
tion was granted.

Though the deed from Natrona County to defendants
was ineffectual as a transfer of title, it gave defendants
a right to reimbursement under principles of equity

that have been recognized by statute and discussed by this court. See Brewer v. Kulien, 42 Wyo. 314, 294 P. 777; Brewer v. Folsom Bros. Co., 43 Wyo. 433, 5 P. (2d) 283, 43 Wyo. 517, 7 P. (2d) 224; R. S. 1931, 89-2951; ch. 76 Sess. Laws 1933; ch. 84, Sess. Laws 1935 as amended ch. 84, Sess. Laws 1937. See, also, Denny v. Stevens, 52 Wyo. 253, 263, 73 P. (2d) 308, 311. From the facts in evidence on the hearing the court had reason to believe that the plaintiff could not succeed in the action, and had no right to have the injunction continued, unless he was willing to pay the defendants what was due them as the holders of the invalid tax title. Though defendants' claim was clearly shown by the motion and affidavits, plaintiff made no offer, not even a general offer to do equity.

In this court plaintiff, still failing to indicate an intention to pay defendants what may be found due them, argues that the time for making an offer has not yet been reached, calling our attention to the fact that the defendants have not yet filed their answer. The statute (R. S. 1931, § 89-3515), however, provides that the motion to vacate may be made upon "affidavits on the part of the party enjoined, with or without answer," and we think when the motion is made before answer the judge in hearing and ruling on the motion may give defensive matters set up in affidavits the same effect as would be given to the same matters set up in an answer. See H. W. Gossard Co. v. Crosby, 132 Ia. 155, 162, 109 N. W. 483, 486, 6 L. R. A. (N. S) 1115.

Plaintiff says that he "was under no obligations whatever to allege or make a tender," and cites two cases each decided on demurrer to the petition in an action to quiet title against a tax sale purchaser. In Clark v. Darlington, 7 S. D. 148, 63 N. W. 771, 58 Am. St. Rep. 835, in a syllabus by the court, the rule of pleading is stated in a negative way. When "it does

not appear on the face of the complaint, either expressly or by implication of law or fact, that any taxes were or are due on the land, the complaint is not subject to a general demurrer for failure to offer to pay whatever taxes may be justly found due." Gage v. Kaufman, 133 U. S. 471, is to the same effect. The bill in that case alleged "that there were no taxes unpaid on which the sale could have been made," which apparently was treated as equivalent to an allegation that there were no taxes unpaid. It may be conceded that if the sale is made when there are no taxes unpaid, the purchaser acquires no right to reimbursement. See note, 26 A. L. R. 622. Gage v. Kaufman arose in Illinois where the general rule seems to be that plaintiff's pleading in an action to quiet title, alleging that defendant claims under a defective tax title, is bad on demurrer if it contains no offer to pay defendant what is justly due. Durfree v. Murray, 7 Ill. App. 213; Farwell v. Harding, 96 Ill. 32, 38. Other cases to the same effect are Weston v. Meyers, 45 Neb. 95, 63 N. W. 117; Demnan v. Steinbach, 29 Wash. 179, 69 P. 751; Montgomery v. Trumbo, 126 Ind. 331, 26 N. E. 54; Lohr v. George, 65 W. Va. 241, 249, 64 S. E. 609, 612; Knox v. Dunn, 22 Kan. 683.

This rule of pleading is applied in cases where the petition sets up the nature of the defendants' claimed interest. It is based on the maxim that one who seeks equity must do equity. The maxim in effect says that the court will not give a party equitable relief unless he has acknowledged or conceded, or will admit and provide for, all rights, claims and demands justly belonging to the adversary party and growing out of the matter in controversy. Pomeroy, Eq. Jur. (4th ed.) § 385. The rule of pleading is not always strictly enforced. See Harney v. Montgomery, 29 Wyo. 362, 380, 213 P. 378. It could not be applied in the case at bar because plaintiff's petition, as is permissible in the

statutory action (see Durell v. Abbott, 6 Wyo. 265, 44 P. 647), did not allege the nature of defendants' claim. But we think the state of the pleadings should make no difference in defendants' right to rely on the governing principle expressed in the maxim at a hearing to determine plaintiff's right to the equitable remedy of injunction. We have several times said that the granting and vacating of temporary injunctions are matters resting in the sound discretion of the court. Stowe v. Powers, 19 Wyo. 291, 304, 116 P. 576, and cases cited. The only case called to our attention in which this court reversed the action of the trial court in denying a temporary injunction is Weaver v. Richardson, 21 Wyo. 343, 132 P. 1148, in which it was said that we were "unable to see any substantial reason" for a denial of the writ.

In the case at bar we cannot say that the trial judge's discretion was not properly exercised in vacating the injunction on the ground that plaintiff had advisedly refrained from offering to do equity.

RINER, Ch. J., and ILSLEY, Dist. J., concur.