JOHN K. RIEDESEL AND LILIAN E. RIEDESEL, sometimes known as Lillian E. Riedesel,

*Plaintiffs and Respondents,*

vs.

MAURICE M. TOWNE, et. al.,

*Defendants,*

and J. E. HARRIS,

*Defendant and Appellant.*

(No. 2433; May 31st, 1949; 206 Pac. (2d) 747).

For Plaintiffs and Respondents, the cause was submitted on the brief of Mr. F. K. Dukes of Laramie, Wyoming.

For Defendant and Appellant the cause was submitted on the brief of G. R. McConnell of Laramie, Wyoming.

## OPINION

RINER, Chief Justice.

John K. Riedesel and Lillian E. Riedesel, his wife, as plaintiffs brought a suit to quiet title to certain lands in Albany County, Wyoming, against J. E. Harris and others as defendants in the District Court of that county. All of the defendants other than Harris, though filing an answer in form a general denial, took no part in the trial, and judgment was taken against them accordingly. Harris, through his counsel filed an answer and plaintiff replied thereto. On these pleadings the cause proceeded to trial before the court without a jury with the result that a judgment was entered against Harris, also, quieting title to the lands aforesaid in the plaintiffs. From this judgment Harris alone has brought the cause here for review by direct appeal.

The lands in which Harris by his answer claimed an interest adverse to plaintiffs are:

"The Southwest Quarter (SW¼) of the Southwest Quarter (SW¼) of Section One (1), and the South Half (S½) of the Southwest Quarter (SW¼) of Section Two (2), and the Northeast Quarter (NE¼) of the Northeast Quarter (NE¼), and the East Half (E½) of the Southeast Quarter (SE¼) of Section Twelve (12), all in Township Seventeen (17) North, Range Seventy-four (74) West of the 6th P.M."

The material facts so far as they require consideration here are very little if at all in controversy and may be stated as follows:

The lands aforesaid were sold in the year 1922 at an Albany County tax sale for non-payment of taxes. There being no other offers to purchase these lands at this sale, the then County Treasurer sold said lands to Albany County. On October 5, 1926 the Board of County Commissioners of said county conveyed by

deed all of its interest in said lands to Lillian E. Riedesel, one of the plaintiffs herein for the consideration of $226.38. This deed was thereafter on October 8, 1926 duly recorded in the office of the County Clerk and Ex Officio Register of Deeds of Albany County, Wyoming. It appears that one Buntin originally owned these lands and about the year 1919 he gave Riedesel a contract to buy them and the latter went into possession thereof. Thereafter some oil drilling work was commenced in the vicinity and Buntin declined to "go through with his contract." Riedesel simply stayed on the land and as stated above the tax sale thereafter occurred and ultimately through his wife Lillian they purchased the property from the County as hereinbefore detailed.

The First Savings Bank and Trust Company of Nashville, Tennessee, a corporation organized and existing under the laws of that state was the owner of the property in question according to the answer filed by Harris and admitted by the reply filed by the plaintiffs but just when it became such owner through transfer from Buntin or others is far from clear. It does appear, however, that this bank was succeeded by the Nashville Trust Company, also of Nashville, Tennessee and that this bank last mentioned undertook for a valuable consideration on June 27, 1940 to transfer by deed all its interest in said lands to J. E. Harris, one of the defendants in the district court aforesaid and appellant herein, said deed being of record in the office of the County Clerk of Albany County in Book 136, page 277.

The plaintiffs base their title to the lands in question upon the County Commissioners' deed to Mrs. Riedesel issued as above described and also the fact that plaintiffs "have been, and are now in open, continuous, hostile, notorious, and adverse possession of all of said

lands" in controversy here; that they have held this possession "for ten years and more next immediately preceding the commencement of this action."

Plaintiff, John K. Riedesel's pertinent testimony on behalf of the plaintiffs relative to these lands is substantially as follows: That they have had possession of the real property in question under said county deed since the year 1926; that he himself had possession of this land prior to the time of said deed from Albany County under a contract to buy it from the then owner, Buntin, who, as already recounted, declined to perform the contract, but nevertheless Riedesel remained on the land; that the land was thereafter sold by the officers of Albany County under sale for delinquent taxes; that he was in possession of the land at the time the deed was obtained in 1926; that no one else was in possession of the land at that time; that he had exclusive possession of it then and he and his wife have had that ever since; that he has been in possession of these lands since 1919; that he erected improvements upon them after the year 1926; describing these improvements he stated that there is a barn there that is twenty-six feet wide and eighty-two feet long with a hay loft in it; then there is a chicken house that is about sixty feet long and also a cattle shed which he built out of poles with a hay loft in it and slabs over the top of the poles; that it will hold about 150 or 200 head of cattle; that he and no one else has used these buildings and he still uses them; that in exercising this use and possession, he did so believing that he owned the land by virtue of the above mentioned commissioners' deed; that he claimed the right to this land; that he made his home on this land; the house is not now actually situated on this portion of Section 12 that Mr. Harris claims; that the latter is not claiming Riedesel's house; that Mrs. Riedesel was living with him during all this time since 1919 and

also his son Warren; that he has never had any other home.

Riedesel also testified that he improved the irrigation on these lands a whole lot; that is, it wasn't cutting any hay when he went there and it is cutting a good crop now; that the first year we cut about four tons of hay and now it cuts better than fifty tons; that this improved condition of the land is due to Riedesel's work in digging ditches; that there were four years that the water maintenance had never been paid up on the land and we had to pay that maintenance charge in order to get the water to get that land back and it took almost ten years to get it producing good again; that each acre of the land is assessed for the upkeep and maintenance of the Oasis Ditch which is a part of the Laramie Valley Municipal Irrigation District; that the County Treasurer collects the water assessment maintenance; that as far back as 1905 Riedesel had to pay a year back each time in order to get that water reinstated on each place; that it would be forty years they paid, that was accumulated altogether; that they made the Riedesels pay two years each time so they got it paid clear back; that then the Riedesels got irrigation water and applied it to their lands day and night, all of the land in question here but not all of the three sections, one eighty acre tract in Section 12, one forty acre tract in Section 2 and also eighty acres in Section 2 and forty acres in Section 1 that they irrigated; that all his neighbors, including the defendant, Harris, have seen him doing this irrigation work; that all of this land is all under fence but not in the same field; that he and his neighbors, fifty-fifty, keep up the fences, one building part of the fence and the other builds the rest; that since taking this deed from the county, Riedesel has paid the county taxes on the lands for each and every year and these taxes are paid to date.

Mrs. Riedesel also testifying on behalf of the plaintiffs agreed that he had stated the true facts in regard to this land and its use; that the sum total of the water assessments paid by the Riedesels on these lands is $2317.32 and also $637.80 for taxes; that the taxes and maintenance charges on these lands are all paid up in these several amounts; that when the Buntin contract was in existence, the land was poorly fenced; that now a regular barbed wire fence is around it.

The defendant Harris introduced no testimony but submitted evidence to the effect that the official "Notice of Sale of Lands and Improvements for Taxes" in 1922 was only published once each week for two weeks, in the Laramie Daily Boomerang and not at all in any other paper published in Albany County. Section 2877 W. C. S. 1920, the law prevailing at the time such publication was made required inter alia that:

"The treasurer shall give notice of the sale of real property for delinquent taxes, by publication thereof, once a week for four weeks, in a newspaper in his county, if there be one."

The testimony of the plaintiffs as above reviewed stands in the record undisputed.

It appears to be the contention of Appellant Harris that the title claimed by the plaintiffs "was by virtue of a county commissioners' deed and no other claim." We do not so interpret the pleadings or the evidence in this record. We note that counsel for appellant concedes that the quit claim deed from the Board of County Commissioners was "legal on its face and it required extraneous evidence to prove that the proceedings were irregular and contrary to the statute." But plaintiffs' pleadings and proofs disclose that they are claiming the lands in dispute not only under the commissioners' deed aforesaid but also by reason of continuous, open, notorious and adverse possession of these lands by

them for more than twenty years prior to the bringing of the action at bar, this action having been instituted on January 23, 1948.

We may concede that if the plaintiffs' title rested alone upon the deed aforesaid, then it might be claimed that the sale of these lands for taxes was void with the result that neither the county nor the plaintiffs received any title to the lands affected. We find no argument or authority submitted to show that plaintiffs may not succeed through their claim of adverse possession of these premises under a county commissioners' deed legal on its face plus due and proper showing of adverse possession of the lands in question.

Whitney vs. Posey, 180 Okl. 373, 69 Pac. 2d 335 was an action brought to quiet title in the plaintiffs for certain lands in the State of Oklahoma. They obtained a judgment in their favor and the defendants appealed. In the course of its discussion of the case the court said in affirming the judgment below:

"The defendants introduced evidence at the trial to show certain irregularities in the proceedings for tax deed, which they contend rendered the deed void. As we view the record, this evidence was immaterial for the reason that the action is based, not upon the tax deed, but upon adverse possession. We find no allegation in the petition with reference to the regularity of the tax proceedings or the validity of the tax deed, nor any specific finding in the judgment of the court with reference thereto, as in actions to quiet title upon tax deed. Apparently it was pleaded in the petition for the sole purpose of establishing one of the essential elements of adverse possession, namely, that plaintiffs' possession during the statutory period was not held in subordination to any title or claim of the defendants, but was adverse and hostile to all claimants.

"In the case of Bonebrake et al. v. Flourney et al., 133 Okl. 101, 271 P. 658, where it is conceded that tax deed was void upon its face, the following rule is stated in

the syllabus: 'The title of a person in the actual and peaceable possession of land, claiming the same under a tax deed, void upon its face, will ripen into a good title, where continuous, exclusive, adverse, and hostile possession is held thereunder for a period of 15 years.' "In the case of McMann v. McMann, et al., 123 Okl. 26, 252 P. 1093, 1095, this court quoted with approval from Goodman v. Nichols, 44 Kan. 22, 23 P. 957, 960, as follows: 'An adverse possession of real estate for the statutory period, held in good faith under a deed, will confer title, however defective the deed may be, and although the judicial proceedings and sale under which it is issued were void, and will do so even if the deed is void on its face.' Also, see, Mehard v. Little, 81 Okl. 1, 196 P. 536".

In Black vs. Brown, 129 Ark. 270, 195 S. W. 673 the opening paragraph of the statement of the case by the court reads:

"Appellees instituted this action in the chancery court against appellant to cancel, as a cloud on their title, a clerk's tax deed executed to him to two lots in the town of Stuttgart, Arkansas. Their complaint sets up title in themeslves and they allege that the tax deed to appellant is void. Appellant claims title under his tax deed and pleads the two years' statute of limitations." Reversing a decree for appellees the court concluded:

"Appellant went into possession of the lots under his tax deed and remained in possession for more than two years before this action was instituted. He thereby acquired title by adverse possession, even though the tax sale was void. Gannon v. Moore (83 Ark. 196), supra, and cases cited."

It is not necessary to multiply cases on the point involved here from other jurisdictions, though that could easily be done. The decisions of this court are ample to dispose of the matter in hand.

In City of Rock Springs vs. Sturm, 39 Wyo. 494, 517, 273 Pac. 908 it is said:

"The law contemplates that rights in land may be lost to another by means of adverse possession. We are not the judges of the wisdom of that. The prime object in prescribing how such adverse possession shall be made manifest, of what elements or requisites it shall be composed, is to advise the real owner that his ownership is in danger, and the law has deemed the time fixed as sufficiently long so as to give him ample opportunity to protect his right; and if he fails to do so, when thus advised, within the time fixed, he is considered as having acquiesced in the transfer of ownership. Monnott v. Murphy, 207 N. Y. 240, 100 N. E. 742. Bearing this in mind, it is a reasonable rule that when a man has occupied a piece of ground, though under a mistaken belief as to the true boundary, for the period prescribed by law openly, notoriously, exclusively and in a manner plainly indicating that he acted as owner thereof, the presumption should be, in the absence of explanatory circumstances showing the contrary, that he occupied the land adversely and under a claim of right, casting the burden of explaining such possession upon the person who disputes his right."

In Stryker vs. Rasch, 57 Wyo. 34, 112 Pac. 2d 570 where a recorded mortgage was executed in 1921 to secure indebtedness due at least by 1922 and an adverse possessor of the mortgaged land took possession in 1928 remained in possession for twelve years, it was held that the possessor obtained a title by adverse possession which was valid against the mortgagee, absent proof that the mortgage deed was extended prior to the time the adverse possessor took possession so that the mortgagee did not have the ten year statutory period after due date of the mortgage within which to foreclose same. Referring to our ten year statute for bringing an action to recover real property (Section 3-501 W. C. S. 1945) it was pointed out that the courts:

"have almost universally held that such statute is not merely a statute of limitation, but that when adverse possession for the statutory period is held, the adverse possessor is vested with full, new and distinct title."

But a case decidedly more closely in point in its facts, if possible, than the two decisions of this court reviewed above is that of Bruch vs. Benedict, 62 Wyo. 213, 165 Pac. 2d 561. It seems neither of the parties in the case at bar have referred to it in their brief work in any way. That was an action to quiet title to certain lands brought by Pauline R. Bruch against Emma Benedict, Louie R. Benedict and others. In that case it was assumed by this court that the tax deed taken by plaintiff's predecessors in interest, one Baughn was void upon its face. Defendant's counsel has in the case at bar called to our attention the cases of Denny vs. Stevens, 52 Wyo. 253, 73 Pac. 2d 308, 75 Pac. 2d 378, and Matthews vs. Blake, 16 Wyo. 116, 92 Pac. 242, both these decisions being cited and relied upon in his brief for the appellant. But these cases were distinguished in the Bruch case, it being pointed out that they involved only the short statute of limitations, Section 115-309 W. R. S. 1931 (W. C. S. 1945, Section 32-1628).

In connection therewith it was pointed out that:

"However, counsel for plaintiff does not, in this Court, rely upon the short statute of limitations, but relies upon adverse possession for the ordinary prescriptive period of ten years, so that the point above mentioned is not material herein."

It was indicated also in the Bruch case that:

"A claim of title is sufficient in this state, for the purpose of initiating adverse possession. City of Rock Springs v. Sturm, 39 Wyo. 494, 273 P. 908, 97 A. L. R. 1."

It was also said in discussion of the admissibility in evidence of the tax deed involved therein that:

"The question then remains as to whether or not the deed, considering that the granting clause did in fact contain a description of the land purported to be conveyed, was admissible for any purpose in this case.

It is stated in 2 C. J. S., Adverse Possession, § 72, page 591, that a void or worthless deed may be sufficient to show the hostile character of the possession or the date on which adverse possession began. In Horsky v. McHennan, 53 Mont. 50, 162 P. 376, 380, one of the cases cited to us by counsel for the defendant, the Court stated that: 'While these deeds, being void on their face, were ineffectual to constitute title, they were evidence of a claim of title ample to sustain a possessio pedis * * *, if not, as some authorities insist, color of title sufficient under general statutes of limitation, to support adverse possession of the lands adequately described.' In Philbin v. Carr, 75 Ind. App. 560, 129 N. E. 19, 25, 706, the Court stated: 'It has been said that a void or worthless deed has always been received for another purpose, viz., as evidence that the occupant claims for himself; that his occupancy is under a claim of right. In other words, that his possession is adverse. Phillow v. Roberts, 13 How. (U.S.) 472, 14 L. Ed. 226. That is all very true. But the fact that the possession has been adverse may be shown also by spoken words —as in cases of parol gifts or attempted parol conveyances—by a continuing course of conduct, and by any relevant facts. Therefore when a void deed is received in evidence solely for this purpose its admissibility does not rest on the ground that it constitutes color of title, but rather on the ground that it is a circumstance tending to show that the possession has not been that of a mere trespasser, or that of a lessee, or that it has been in any manner subservient to the owner of the legal title, but at all times has been under a claim of ownership or claim of title.' "

In the case at bar the commissioners' deed was, as we have heretofore remarked and counsel concedes, valid on its face and no objection was interposed to its reception in evidence. In the Bruch case many points were raised in an effort to overthrow the claim of adverse possession advanced by plaintiff. After careful and thorough examination this court concluded they were without merit and the judgment for the plaintiff was accordingly affirmed. It is quite apparent the case

at bar is a much stronger one for the plaintiff than existed in the Bruch litigation.

Under the facts shown by this record and our prior decisions mentioned above, we can hardly do otherwise than affirm the judgment of the District Court of Albany County. An order to that effect should be entered.

*Affirmed.*

KIMBALL, J. and BLUME, J. concur.