TOM HUDSON,

*Plaintiff and Respondent,*

vs.

DELBERT A. ERICKSON and E. MARIE ERICK-
SON, *Defendants and Appellants,* and J. O. KREGE,
*Defendant,* and in the event J. O. Krege be not living,
then all the heirs, devisees, creditors and representa-
tives of said J. O. Krege, all of such heirs, devisees,
creditors and representatives being unknown to
plaintiff.

(No. 2441; March 21, 1950; 216 Pac. (2d) 379)

168

For the defendants and appellants the cause was submitted upon the brief of P. W. Spaulding of Evanston, Wyoming.

For the plaintiff and respondent the cause was submitted upon the brief of Clarence W. Cook of Evanston, Wyoming.

## OPINION.

BLUME, Justice.

This case involves an action brought by Tom Hudson as plaintiff, to quiet title to Lot 15 in Block 1 of the Fairview Addition to the town of Evanston. The defendants are Delbert A. Erickson, E. Marie Erickson, owners of an adjoining lot, J. O. Krege, former owner of Lot 15, and his unknown heirs, etc. J. O. Krege and his unknown heirs, etc., made default and judgment was rendered herein quieting title to the lot in question as to them. They will not hereafter be again referred to and plaintiff will be designated as such, and the Ericksons will be designated as the defendants. The court rendered judgment in favor of the plaintiff against the Ericksons and the latter have appealed to this court.

This case originates out of an unfortunate dispute between neighbors over the true dividing line

between the respective lots occupied by them. The predecessor, in interest of the defendants, unfortunately constructed a home on the lot of the defendant close to the dividing line, leaving insufficient space to construct a cement walk of approximately 2 feet in width along the dividing line—a walk the convenience of which is readily appreciated. Defendants tried to buy a little space so they might construct this walk. Plaintiff refused to sell. So we are called on to apply the law as we find it to the facts in this case, although we could have wished that it had been made unnecessary for us to do so, particularly in view of the probably limited value of the property in dispute to plaintiff.

The petition herein is the ordinary petition in an action to quiet title. Plaintiff alleged the ownership of Lot 15 in Block 1 of the Fairview Addition above mentioned, and that the defendants claimed such interest therein, adverse to plaintiff. Plaintiff asked that title to the property be quieted in him. Defendants filed an answer alleging in part as follows: "said defendants April 11th, 1936, became owners of and June 1st, 1936, went into possession of lot fourteen in Block one in the Fairview Addition mentioned in said petition. At the time thereof plaintiff was and ever since has been in possession of the lot fifteen mentioned in said petition and that the westerly line of said lot 15 is the easterly line of said lot 14, and said lot line then was and ever since has been marked on the ground by a stake and fence which at all times since and to now has remained in the same position. Said defendants at all times since said June 1st, 1936, to the time hereof have been in exclusive possession of said lot 14 extending to said lot line so designated by said post and fence and have in good faith claimed said post and fence to be the easterly line of said lot

14 and have at all times in good faith claimed ownership of and held such possession openly and exclusively of and adversely to all persons, including the plaintiff, and have erected and maintained valuable improvements on said lot 14 and to said easterly line thereof as so designated and paid taxes thereon. During all said times from June 1st, 1936, plaintiff has been in possession of said lot 15 and has acquiesced in said line between said lots 14 and 15 as so located and determined by said post and fence and has joined defendants in maintaining said fence."

The block in question herein is bounded by Main Street on the south, by Front Street on the North, by First Street on the east and by Second Street on the west, with an alley in the middle running east and west. The lots in question herein are Lots 14 and 15, which face south on Main Street. The streets apparently are all 80 feet in width. The lot in the southwest corner of the block is numbered 12, followed, traveling east, by Lots 13, 14, 15, etc., so that Lot 14 is west of Lot 15. The lots are 40 feet in width and 100 feet in depth. Homes have been constructed on both Lots 14 and 15, and are separated by about 7 feet in width. The actual ground in dispute and litigated herein is a strip of ground west of a fence heretofore in 1938 constructed by plaintiff, with a width of 3 feet and 8 inches at Main Street on the south and 3 feet and 9 inches at the alley on the north, the plaintiff claiming that the true dividing line between Lots 14 and 15 is that distance west of the foregoing fence, and defendants denying that, but claiming that the fence is the true dividing line. This should enable the reader who is interested to construct a map, so as to better visualize the matter in dispute herein.

## 1.  ESTABLISHMENT OF BOUNDARY LINE.

The true division line between Lots 14 and 15 was surveyed and determined by Jehova Chapman, a Civil Engineer and Surveyor of 30 years standing, and at the time of the trial, and in other years, the civil engineer employed by the town of Evanston.  His qualifications to testify as an expert in this case are admitted.  He did not have a happy way of expressing his meaning.  It appears that the Fairview Addition is in the eastern portion of the town of Evanston.  It seems to commence with what is called First Street, and the streets of the town westerly are marked from First Street to Thirteenth Street.  The addition seems to consist of four blocks.  Stakes were apparently put at the lot corners at the time when the addition was laid out in 1892 but these stakes had disappeared.  The witness mentioned three different monuments, one on Third Street to which he tied the line which he surveyed in the case at bar.  Another monument is at the corner of First Street and Front Street, and about 320 feet distant from the lots in question here.  The monument on Front Street and Twelfth Street is distant about 10½ blocks from the lots in question here.  The original town of Evanston apparently was laid out according to a monument in the center of the Union Pacific Railroad track, seemingly at about the place where the depot of the Railroad Company is located.  But the witness did not tie the survey which he made to that monument.  He testified in part as follows:

Q.  Mr. Chapman ,I believe you said you were acquainted with Lot 15?

A.  Yes.

Q.  Have you ever surveyed that lot?

A.  Well, I surveyed it yesterday, the westerly line of 15, and I surveyed it again prior to that on July 7th, 1944.

Q. And by your survey you have determined the property line between Lots 14 and 15 according to the official survey?

A. Yes, sir.

Q. I hand you what has been marked for identification as Plaintiff's Exhibit 1 (map) and ask you what that is.

A. Well, that shows the division line between Lots 14 and 15 of Block 1, of Fairview Addition which tied into the monuments on the property line of the west line of Third Street.

Q. And this map shows, does it not, the whole Lots 12, 13, 14 and 15 in that block?

A. Yes.

Q. This map is drawn to scale?

A. Yes, sir.

(ON CROSS-EXAMINATION)

Q. You say, Mr. Chapman, that you made this map according to the official survey? What do you mean by that?

A. Well, we have established the official survey of the town on the original plat, showing the streets.

Q. From what did you establish the official survey?

A. From the monuments that have been set according to the way the town was originally laid out.

Q. Now, what monument did you find that had any effect on the Fairview Addition?

A. Well, there is a monument on the center line of Front Street, on the westerly line of First Street. That is, at the intersection of First and Front there is a monument.

Q. Who set that monument?

A. An engineer by the name of Aleman.

Q. Who was he?

A. A licensed engineer employed by the City of Evanston.

Q. Do you know how he happened to set that monument in that place?

A. No. He measured it very carefully.

Q. How do you know he measured it very carefully?

A. Because I have checked it twice myself.

Q. Have you ever taken the distance shown on the plat of the Fairview Addition as to what Section it is in—how far it should be from Twelfth Street?

A. If you take the distances from Twelfth Street from the plat and as the Fairview Addition is laid out, you will have it exactly as it is on that plat.

(BY THE COURT)

Q. 55. What is Twelfth Street with reference to this property? I don't get the connection.

NOTE: DISCUSSION BETWEEN COURT AND COUNSEL.

A. I tied this into a monument that was subsequently on First and Front, and this monument is on the intersection of Third and Main. The monument which this survey is tied to is the one that is on the westerly property line of Third Street.

(BY COUNSEL FOR DEFENDANTS)

Q. What did you tie the monument on Twelfth Street to?

A. I used Aleman's survey because he surveyed the town and those monuments are as near accurately established as they possible could be.

(BY COUNSEL FOR PLAINTIFF).

Q. Mr. Chapman, your surveys have been made by tying in with the established monuments?

A. Established monuments put in in 1932. Those are the only established monuments we have.

The remainder of the testimony of the witness related to the survey which was made of the lot and he testified in substance that the true line between Lots 14 and 15 is located, west of the fence in question here, a distance of 3 feet and 8 inches on the south at Main Street and 3 feet and 9 inches on the north at the alley.

Some of the testimony is rather obscure. Part of the answer to Question 55 is unintelligible. It can be explained only by the theory that he pointed to points on the map when he gave the answer. He testified that the original monuments established at the time when the Fairview Addition was laid out no longer exist. At one place the witness stated that he did not look for them. His testimony on this point is apparently contradictory. But the court could and doubtless did reconcile his testimony by construing the statement that he did not look for them by referring that to the time when he made the survey in question in this case. We may also gather the following facts: An official survey or resurvey of the town was made in 1932, apparently by Aleman, civil engineer employed by the town of Evanston. Certain monuments were established at that time which were set "according to the way the town was originally laid out." These are the only monuments which now exist to serve as a starting point for any survey. The monuments on Third Street, and that located on the intersection of First and Front Streets are two of these monuments. Chapman apparently took the monument on Third Street as the starting point of his survey, but apparently also took into consideration the monument on the intersection at First and Front Streets, since he stated that that monument was distant 320 feet from the true dividing line between Lots 14 and 15 in question here, and is accurately located in relation to another monument on Twelfth Street. The distance of the monument on Third Street from the line in question is, by straight line as follows: Go west 120 feet, south 80 feet, west 80 feet, and again west 380 feet, a total distance of 660 feet.

Counsel for defendants objected to the map in evidence, made by Chapman. But it is said in 11 C. J. S.

702 that: "A surveyor may explain the manner by which certain points were located, may illustrate his testimony by the use of charts and plans prepared from actual knowledge and surveys, and may give parol evidence explanatory of his map." The real objection to the map and the claim of the insufficiency of the location of the dividing line by Chapman seems to be based on the claim that the monuments to which Chapman testifiied are of no value to serve as a starting point. But counsel fail to point out the reasons, unless it be that there is no direct evidence that the monument on Twelfth Street was tied to the original monument at the Union Pacific Depot. But it appears that Aleman made the resurvey of the town in 1932 as a civil engineer employed by the town of Evanston, so we must consider it as an official survey, and it is said in 11 C. J. S. 692 that: "In the case of official surveys, it will always be presumed that the surveyor did his duty, and that his work was accurate." We should hardly be asked to hold that the monuments, probably painfully established by Aleman, are now of no value, and thus upset and disturb and make uncertain the location of perhaps hundreds of lots in the town of Evanston. We find nothing in the cases cited by counsel which is inconsistent with this conclusion.

Counsel for defendants offered to prove by Mrs. Erickson: "that directly across the street from the southeasterly line of said Lot 14 and on the southeasterly line of the corresponding lot is the location of an old fence that will line up exact and true with the line of this wire fence between Lots 14 and 15 and that the location of that old fence has been within the knowledge of this witness for 30 years." The court sustained the objection made to the offer. Counsel for defendants claim that this was error and he re-

lies upon the case of Beaubrien vs. Kellogg, 69 Mich. 333, 37 N. W. 691, 696. In that case the dispute was as to the true dividing line between so-called Lots 51 and 54. Two witnesses testified that the fence between corresponding lots across the street were the boundaries of these lots; further, that an old fence had existed 20 years previously between Lots 54 and 51, corresponding to the fence between the corresponding lots across the street, thus showing an old continuing line. In the case at bar there was no offer to prove that the old fence on the lot across the street was in fact or had been recognized as a true dividing line between lots corresponding to the lots in question here. Nor was the fence constructed between Lots 14 and 15 an old fence, but a recent one. Hence, there was not in this case an old continuing line between corresponding lots. A similar question arose in the case of McKinney vs. Doane, 155 Mo. 287, 56 S. W. 304. In that case it was said: "During the trial, defendant offered to show by several witnesses that the fence between his lot and plaintiff's was in line with fences on adjoining lots, or on corresponding lots to the north and south, which, upon objection of plaintiff, was excluded. Defendant insists that this was error. But such evidence shed no light upon the questions involved in the case at bar, and was immaterial, and therefore properly excluded." In the case of Fuller vs. Worth, 91 Wis. 406, 64 N. W. 995, the court said: "The court also admitted evidence to show that this fence was in line with fences on adjoining farms north and south of it. This, of course, proved nothing material to the case, unless it should also be established that those other fences were on the true line of the government survey. This introduces a new and collateral issue, incompetent to be tried in the action. The evidence was altogether immaterial, and, for that reason incompetent. Fairfield vs. Barrette,

73 Wis. 463, 41 N. W. 624." If there had been no better evidence as to the division line between Lots 14 and 15 than an old fence across the street, the evidence perhaps should have been admitted. But under the circumstances in this case, we think that if there was an error in refusing the offer above mentioned, the error was harmless.

If the boundary lines between the lots located and determined by the witness Chapman are not in fact the true dividing lines, as contended by defendants, they could have easily shown that their Lot 14, bounded by those lines, was only about 36½ feet in width. They presumably knew the west line of their lot as it had been laid out and as it had been used by them. They made no attempt to make such a showing; nor do they claim that to be so. That surely is a circumstance showing the true dividing line between Lots 14 and 15 to be that testified to by the witness Chapman.

Counsel for the defendants attempts to show, illustrated by photographs which must be clearer to counsel than they are to us, that: "the plaintiff in 1936 by measurements he then made, established the westerly line of his Lot 15 in exact conformity with the evidence of the location on the ground of comparable lines (across the street) in the Fairview Addition which was offered by defendant, Mrs. Erickson, which should have been received. He then found his lot line at the fence line." We think it is not necessary to attempt to follow that argument. We have already discussed the value of Mrs. Erickson's testimony. Moreover, even if it were true that plaintiff did not, as he testified, establish his fence for convenience and as a temporary one, but that he attempted to and thought to establish it according to what he then considered the true line, that would not at all

be decisive in this case, especially in view of the fact that fence was not established until 1938.

Furthermore, it appears herein that by agreement of the parties, the trial judge went and viewed the premises in question here, naturally giving him a better understanding of the questions here involved. It was said in the case of Davis-Robinson vs. Patee, 49 Wyo. 470, 57 P. 2d 681, 682: "It is to be observed that in addition to the evidence in the case being in the condition discussed above, the trial judge, as already has been noted, apparently with the consent of the parties, went to the premises of the owner and viewed the cement work which is the subject of this controversy. Under such circumstances, the finding of the trier of facts are entitled to especial weight and consideration in a reviewing court, and, to say the least, should not be set aside except for very strong and excellent reasons, as the following authorities will demonstrate. (Cases cited)." To the same effect are Binning vs. Miller, 60 Wyo. 114, 146 P. 2d 527, Jacoby vs. Town of City of Gillette, (Wyo.) 174 P. 2d 505. Taking all the facts into consideration, we do not feel warranted in overturning the conclusion at which the trial court evidently arrived herein.

## 2. ADVERSE POSSESSION BY DEFENDANTS.

Defendants claim that they obtained title to the property up to the fence which was erected by the plaintiff by adverse possession and acquiescence in the division line. Plaintiff testified he established the fence for convenience which he knew was not on the boundary line. There is testimony that whatever use defendants made of the area in dispute was permissive, preventing the acquisition of title by adverse possession. See Johnson vs. Szumowicz, 63 Wyo. 211, 179

P. 2d 1012. In 1944 plaintiff laid a sidewalk in front of his property to the line established by the witness Chapman, thus making a distinct claim to the disputed area. The claim of adverse possession to the disputed area and acquiescence in the dividing line is based in the main at least, as clearly shown in the answer filed herein, on the construction and existence of the fence above mentioned. The undisputed testimony is that this fence was not constructed until 1938. The action herein was commenced on December 12, 1946. So that in any view of the case, adverse possession and acquiescence in the boundary line has not been had for a period of 10 years and hence no title can be claimed upon that theory. See Carstensen vs. Brown, 32 Wyo. 491, 501, 236 P. 517. Without reviewing the testimony in detail, we cannot say that the trial court erred in its finding on the point in question here.

## 3. PLAINTIFF'S TITLE.

Counsel for the defendants argues that in a suit to quiet title, plaintiff has the burden of proving that he has a perfect legal or equitable title and that he must recover on the strength of his own title and not the weakness of his adversary's. See Davis et al. vs. Convention, 45 Wyo. 148, 16 P. 2d. 48. That rule of law is correct, but we think it was fully satisfied in the case at bar. Counsel claim that plaintiff's title which was acquired from the county was void. It appears that the property was sold to the County of Uinta on July 5, 1927, by reason of the non-payment of taxes for 1925 and 1926. The oath of the assessor was not appended to the tax rolls for these years and it is claimed accordingly that the title acquired by the plaintiff from the county is void. Reliance is placed upon Brewer vs. Kulien, 42 Wyo. 314, 294 P. 777, Denny vs. Stevens, 52 Wyo. 253, 73 P. 2d 308, Huber

vs. Delong, 54 Wyo. 240, 91 P. 2d 53. In these cases the tax title was attached by the former owner of the property or his privy, and hence they are not in point herein, for in this case, the tax title is attacked by a stranger to the title. While the deed to plaintiff from the county was executed in 1936, he actually bought the property in 1935 and constructed a home thereon which was finished in the spring of 1936. He moved into it at that time and has been in possession thereof ever since. It would seem then that he acquired title by adverse possession. Riedesel vs. Towne, (Wyo.) 206 P. 2d 747, Bruch vs. Benedict, 62 Wyo. 213, 165 P. 2d 561. Counsel for defendants, however, claim that, since plaintiff constructed a fence between Lots 14 and 15, he never had any adverse possession of the strip of land in controversy here, and while "the outer limits to which an adverse entrant is deemed to hold are coextensive, basically and primarily, with the boundaries stated in the instrument which furnishes his color of title," (2 C. J. S. 779) the entrant may, by his acts or statements, restrict his claim within narrower bounds than those designated in his muniments of title. 2 C. J. S. 781. And it is asserted that plaintiff restricted his claim to and limited it by the fence which he constructed. We think, however, that the restriction hardly applies in the case at bar. The fence as heretofore stated was not constructed until 1938. Plaintiff had at least had possession for the period of 2 years. He asserts that the fence was constructed merely as one of convenience and to keep out dogs. And the evidence in his behalf is, in substance, that he always claimed Lot 15 to its true boundary.

Moreover, it is stated in 51 Am. Juris. 979 as follows: "The validity of a tax title or of a tax sale can be assailed only by one who can show that he or those under whom he claims had some title to or interest

in the property at the time of the sale, and the necessity of proof by the taxpayer of strict compliance with the statute exists only in a controversy between himself and the former owner, or one claiming under him. As against a mere intruder it is sufficient to show a tax deed." Counsel say that the Ericksons are not intruders. We think they were within the contemplation of the rule above stated. The rule here mentioned was recognized by this court in the case of McCarthy vs. Union Pac. Ry. Co., 58 Wyo. 308, 324, 131 P. 2d 326, where we stated: "It seems that the person attacking such title (tax title) must be able to show that he or his predecessor in interest, by grant, had an interest in the land." A number of cases are cited. Moreover, the situation in this case is a peculiar one. The former owner of Lot 15, in controversy here, was made a party defendant in this case. So were his unknown heirs. A decree has heretofore been entered in this court quieting title as against them. So at this time, in any event, while this case is pending in this court, it cannot be said that J. O. Krege, the former owner of Lot 15, has any title thereto. To hold otherwise would be to impugn the judgment of the district court which has not been attacked by anyone.

From what has heretofore been said, we see no escape from affirming the judgment of the district court and that is accordingly done.

*Affirmed.*

RINER, C. J., and KIMBALL, J. concur.